827 F.2d 1169
 CENTRAL ILLINOIS LIGHT COMPANY, et al., an Illinois
corporation, Plaintiffs- Appellees,
Illinois Telephone Association, Inc., an Illinois not-for
profit corporation, Plaintiff-In-Intervention-Appellee,
v.
CITIZENS UTILITY BOARD, et al., Defendants-Appellants.
 Nos. 86-2886, 86-2887.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 18, 1987.
Decided Aug. 28, 1987.
 
 John W. McCaffrey, Atty. Gen. Office, Steven F. Pflaum, O'Donnell & Gordon, Chicago, Ill., for defendants-appellants.
 Stephen M. Shapiro, Mayer, Brown & Platt, Chicago, Ill., for plaintiffs-appellees.
 Before BAUER, Chief Judge, and WOOD, Circuit Judge, and GRANT, Senior District Judge.*
 BAUER, Chief Judge.
 
 
 1
 The question presented is whether Sections 9 and 10 of the Illinois Citizens Utility Board Act ("CUB ACT"), Ill.Rev.Stat. ch. 111 2/3, Secs. 909, 910 (1986), violates plaintiffs' First Amendment right of freedom of speech under the United States Constitution. The district court 645 F.Supp. 1474, granted plaintiffs' motion for summary judgment based on the Supreme Court's holding in Pacific Gas & Electric Co. v. Public Utilities Comm'n, 475 U.S. 1, 106 S.Ct. 903, 89 L.Ed.2d 1 (1986), that a forced access rule that penalizes the expression of particular points of view and forces the plaintiffs to alter their speech violates plaintiffs' First Amendment right to free speech. We affirm.
 
 I.
 
 2
 The CUB Act was enacted by the Illinois General Assembly on December 1, 1983. Only one of CUB's powers or duties is at issue here. Section 9 of the Act compels the utilities, under threat of criminal prosecution, imposed by Section 10 of the Act, to place messages prepared by CUB in or on the periodic billings that the plaintiffs[1] mail to their customers. Section 9 of the Act requires CUB to furnish its message to the utilities not less than 21 days in advance of their next periodic customer billing. Section 9 specifies the permissible size and weight of any CUB message, and requires that "any public utility furnished with an enclosure or statement ... [by CUB] shall print or otherwise include or enclose such enclosure or statement within, upon or attached to the next periodic customer billing which the public utility mails or delivers to any consumer." Ill.Rev.Stat.1985, ch. 111 2/3 Sec. 909(2)(a). The utilities are required to include as many as four CUB messages annually in or on their periodic billings. Id., Sec. 909(2)(b). Section 9(1)(c) of the Act describes the permissible content of CUB messages. Section 9(1)(c) provides:
 
 
 3
 "An enclosure furnished by [CUB] ... shall be limited to informing the reader of the purpose, nature and activities of [CUB] as set forth in this Act and informing the reader that the utility consumer billed may become a member in [CUB], maintain membership in [CUB] and contribute money to [CUB] directly. The enclosure may not have the character of a bill, statement or account. Information may include a membership application form."
 
 
 4
 The CUB Act became effective December 1, 1983, and CUB's first distribution of enclosures in utility billings occurred in July, 1984. From July, 1984 to July, 1985, CUB caused 6 million post card messages to be included with utility bills. Without exception, these enclosures have advocated positions contrary to those of the utilities.[2] Section 9(3) provides that the Illinois Commerce Commission "shall approve the enclosure or statement if it determines that the enclosure (a) is not false or misleading and (b) satisfies the requirements of this Act." The Commission has approved, without substantive change, every proposed enclosure that CUB has submitted since the Act was passed.
 
 
 5
 On appeal, the utilities argue that sections 9 and 10 of the Act are unconstitutional because its provisions: (1) force plaintiffs to disseminate views with which they disagree; (2) burden plaintiffs' expression by compelling access for a group that disagrees with plaintiffs' views; and (3) obligates the plaintiffs to use their property as a vehicle for spreading antagonistic messages. The district court granted the utilities motion for summary judgment finding that CUB's access order is indistinguishable from the order struck down in Pacific Gas.
 
 II.
 The Court's Holding in Pacific Gas
 
 6
 In Pacific Gas, the Supreme Court struck down an order of the California Public Utilities Commission ("CPUC") requiring Pacific Gas and Electric Company ("Pacific Gas") to include in its billing envelopes messages from Toward Utility Rate Normalization ("TURN"), a group representing the interests of residential utility customers. TURN intervened in a ratemaking session before the CPUC in 1980. TURN sought to prevent Pacific Gas from continuing to use its billing envelopes to distribute political editorials in its monthly newsletter, "Progress." TURN argued that utility consumers should not bear the expense of Pacific Gas' political speech. The CPUC determined that the "extra space" remaining in Pacific Gas' billing envelopes after inclusion of the bill and any required legal notices (but excluding "Progress"), up to such total weight as would not result in additional postage cost, belongs to the ratepayers. The CPUC then apportioned the "extra space" to TURN to use four times a year for the next two years. The Supreme Court found that compelled access to private property, like that ordered by the CPUC, impermissibly burdens First Amendment rights in that it "penalizes the expression of particular points of view and forces speakers to alter their speech to conform with an agenda they do not set." Pacific Gas & Electric Co. v. Public Utilities Comm'n, 106 S.Ct. at 908. The Court reasoned that a forced access rule which indirectly restricts speech to certain topics or views, or forces a speaker to respond to the views of others, is unconstitutional. In Pacific Gas, the Court held that access to the envelopes is not content-neutral. According to the Court:
 
 
 7
 The order does not simply award access to the public at large; rather it discriminates on the basis of the viewpoint of the selected speakers. Two of the acknowledged purposes of the access order are to offer the public a greater variety of views in appellant's billing envelope, and to assist groups (such as TURN) that challenge appellant in the Commission's ratemaking proceedings in raising funds.... The variety of the views that the Commission seeks to foster cannot be obtained by including speakers whose speech agrees with appellant's.... Access is limited to persons or groups--such as TURN--who disagree with appellant's views as expressed in Progress and who oppose appellant in Commission proceedings.
 
 
 8
 Id. at 106 S.Ct. at 910. Therefore, the Court concluded that because access to the envelope is not content-neutral, Pacific Gas " 'might well conclude' that, under these circumstances, 'the safe course is to avoid controversy,' thereby reducing the free flow of information and ideas that the First Amendment seeks to promote." Id. at 106 S.Ct. at 910 (quoting Miami Herald Publishing Co. v. Tornillo, 418 U.S. 241 at 257, 94 S.Ct. 2831 at 2839, 41 L.Ed.2d 730 (1974)).
 
 
 9
 In addition, the Court held that the CPUC access order also impermissibly forces Pacific Gas to alter its speech to conform with TURN's agenda. In other words, Pacific Gas may be forced either to appear to agree with TURN's views or to respond. The Court held that a state may not impose such a burden on a corporation's choice to speak or not to speak, absent a compelling interest. Pacific Gas, 106 S.Ct. at 912.
 
 III.
 
 10
 Defendant, CUB, argues that Pacific Gas is not controlling here. Throughout, CUB argues that any similarities between its case and Pacific Gas are superficial because the statutory schemes in Pacific Gas and the CUB Act have radically different objectives, consequences and standards. Thus, CUB argues that the district court erred in concluding that Sections 9 and 10 of the CUB Act are unconstitutional.
 
 
 11
 CUB first argues that the district court erroneously concluded that the CUB Act could not reasonably be construed to impose any meaningful restraint on the scope of CUB's enclosures. It argues that because it can limit the speech in its enclosures to objective, informational speech, that the CUB Act is constitutional on its face. CUB argues that Section 9(1)(c) of the Act expressly limits CUB's enclosures to "informing the reader of the purpose, nature, and activities of [CUB] as stated in the Act" and to seeking membership contributions. It argues that there is no reason why an enclosure cannot present that information in a neutral objective fashion.
 
 
 12
 The Court in Pacific Gas dealt directly with this question. The Court concluded that a forced access requirement impermissibly favors a particular point of view. The CPUC's access order was designed to strengthen the voice of a consumer representative, (TURN), that opposed the utilities in pending ratemaking cases. The Court held that it was not therefore, a content-neutral form of regulation, but rather an attempt to enhance the relative voice of one speaker in an ongoing political and economic debate while burdening its opponent in that same debate. The Court reasoned further that: "[T]he variety of views that the Commission seeks to foster cannot be obtained by including speakers whose speech agrees with appellant's." Pacific Gas, 106 S.Ct. at 910. Similarly, the purpose, nature and activities of CUB necessarily produce speech that disagrees with plaintiffs' views. The district court correctly rejected CUB's argument that the speech in the enclosures is content-neutral.
 
 
 13
 In conjunction with this argument, CUB relies on Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985) for the proposition that the state has substantial leeway to require a business corporation to disclose factual information if that disclosure is reasonably related to a legitimate state interest. Here, CUB points to the state's legitimate interest in balancing the interests of the utilities and the consumers before the Illinois Commerce Commission in its ratemaking hearings. CUB argues that the utilities "hold all the marbles", and thus the consumers need representation before the Illinois Commerce Commission. It argues further that this case is a proper subject for the state's police power regulation and that consequently it is not a freedom of speech case, as is Pacific Gas.
 
 
 14
 In Zauderer, the Court held that Ohio could constitutionally require an attorney to include in a commercial advertisement, purely factual and uncontroversial information about the terms under which the attorney's services are available. Zauderer, 105 S.Ct. at 2281-83. In Pacific Gas, the Supreme Court explained why the Zauderer case is irrelevant here: "[N]othing in Zauderer suggests, however, that the State is equally free to require corporations to carry messages of third parties, where the messages themselves are biased against or are expressly contrary to the corporation's views." Pacific Gas, 106 S.Ct. at 911 n. 12. While Zauderer holds that sellers can be forced to declare information about themselves needed to avoid deception, it does not suggest that companies can be made into involuntary solicitors for their idealogical opponents.
 
 
 15
 Finally, CUB argues that no evidence exists to suggest that the plaintiffs' speech has been chilled or that they have ever been forced to respond when they would have preferred to remain silent. The Court, in Pacific Gas, invalidated the compelled access provision because it placed "impermissible pressure" on the utilities to disseminate the message of one of its opponents. With this constitutional concern in mind, nothing in the Pacific Gas holding suggests that the full potential consequences of an unconstitutional burden or "chilling effect" on First Amendment rights need be proved in order for a plaintiff to obtain appropriate relief. The compelled distribution by the utilities to their customers of messages created by CUB, and the forced assistance by the utilities in soliciting funds for that opponent, are themselves violations of the First Amendment.
 
 
 16
 CUB relies on PruneYard Shopping Center v. Robins, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980), for the proposition that no right exists for a person to refuse to associate with those with which it disagrees. This reliance is misplaced. In PruneYard, the Court held that the owner of a private shopping center had no federal right to exclude handbillers who were otherwise protected by state law. PruneYard is distinguishable from this case because PruneYard did not involve an allegation by the shopping center owner that he disagreed with the views being expressed on his premises. It also did not involve the compelled dissemination of messages of a speaker that had been chosen by the state on the basis of its viewpoint. In Pacific Gas, Justice Marshall pointed out that Pacific Gas & Electric "has never opened up its billing envelope to the use of the public" and "has not abandoned its right to exclude others from its property to the degree that the shopping center owner had done in PruneYard." 106 S.Ct. at 915. Like Pacific Gas, the utilities here maintain the right to exclude others from their property.
 
 
 17
 In any event, the evidence bears out the Court's concern that a compelled access order impermissibly places a burden on plaintiffs' speech. One of the utilities, Commonwealth Edison, has expressly responded to a CUB message and has disassociated itself from CUB's views. On its April, 1985, billings, Edison was required to include a CUB message with the following statement: "WHAT FOLLOWS IS NOT FROM COMMONWEALTH EDISON. WE THINK IT IS MISLEADING AND UNFAIR, BUT WE ARE REQUIRED BY LAW TO PRINT THIS MESSAGE." Commonwealth Edison was pressured to respond, or to refrain from speaking. It is this result that the First Amendment was enacted to guard against. The Supreme Court has consistently invalidated statutes on First Amendment grounds by inferring from the statute's provisions that it would infringe protected rights. See, e.g., Thornburgh v. American College of Obstetricians and Gynecologists, 476 U.S. 747, 106 S.Ct. 2169, 2178-82, 90 L.Ed.2d 779 (1986) (Court struck down an abortion disclosure statute without any showing that disclosures actually deterred or discouraged abortion).
 
 IV.
 
 18
 The statutory scheme created by Section 9 of the Act, in conjunction with Section 10, is, in all material respects, constitutionally indistinguishable from the CPUC order struck down by the Court in Pacific Gas. In both instances, the government has selected a speaker on the basis of its views, and the utilities are forced to disseminate the views of that speaker with which they disagree and to associate themselves with that speaker and its views. In both cases, the utilities' freedom of speech is burdened because they are compelled to give access to their billing materials to a group that regularly opposes them in regulatory proceedings. Finally, in both cases, the utilities are compelled to use their billing materials to convey messages with which they disagree.
 
 
 19
 Under Pacific Gas, therefore, the compelled access provisions of the CUB Act are unconstitutional. For the foregoing reasons, the judgment of the district court is
 
 
 20
 AFFIRMED.
 
 
 
 *
 The Honorable Robert A. Grant, Senior United States District Judge for the Northern District of Indiana, is sitting by designation
 
 
 [1]
 Plaintiffs are all investor-owned utility companies in the business of furnishing electric and/or gas utility services to the public in Illinois. Each plaintiff is a Class A utility within the meaning of the CUB Act. "Class A utility" means any gas, electric or water public utility with annual total gross operating revenues of $2.5 million or more or any telephone public utility with annual total gross operating revenues of $1,600,000 or more
 Intervening plaintiff Illinois Telephone Association, Inc. ("ITA") is a non-profit corporation which represents the interests of the telephone system and certain telephone companies in Illinois. Its membership includes the following Class A utilities: ALLTEL Illinois, Inc., Central Telephone Company of Illinois; Continental Telephone Company of Illinois; General Telephone Company of Illinois; Genesco Telephone Company; Harrisonville Telephone Company; Illinois Consolidated Telephone Company; Inland Telephone Company, and Midland Telephone Company.
 
 
 [2]
 Examples of CUB messages:
 "WARNING! This utility bill may be hazardous to your budget."
 "We don't have to tell you how much your electric, gas and phone bills have increased in recent years. And the sad truth is that there's no end in sight."
 (Exhibit "B" to Plaintiff's Complaint.)