MOUNTAIN STATES TELEPHONE AND TELEGRAPH CO., d/b/a Mountain Bell, a Colorado Corporation, Petitioner,

v.

DISTRICT COURT, CITY AND COUNTY OF DENVER, State of Colorado, and The Honorable William G. Meyer, One of the Judges Thereof, Respondents.

No. 88SA439.

Supreme Court of Colorado,
En Banc.

July 24, 1989.

Davis, Graham & Stubbs, Dale R. Harris, Carole K. Jeffery and Lisa S. Kahn, Denver, and Peter D. Willis, Englewood, for petitioner.

Stutz, Dyer, Miller & Delap, Robert J. Dyer, III, Denver, George Gary Duncan, Santa Fe, N.M., Wolf & Slatkin, James A. Shpall, Denver, and Lawrence G. Walner, Chicago, Ill., for respondents.

Chief Justice QUINN delivered the Opinion of the Court.

In this original proceeding filed by Mountain States Telephone & Telegraph Company, now known as U.S. West Communications (hereinafter referred to as Mountain Bell), we are asked to determine the validity of an order of the Denver District Court directing Mountain Bell to provide space in its monthly billing envelopes for notices of a pending class action brought against Mountain Bell by some of its customers. We issued a rule to show cause, and we now discharge the rule.

## I.

Five individual customers and one corporate customer of Mountain Bell filed a class action complaint against Mountain Bell in the Denver District Court. The suit was brought on behalf of all Colorado Mountain Bell customers, numbering approximately 1.2 million residential and 235,000 business customers, who have been charged for inside wire maintenance service since 1982.[1] Inside wire maintenance involves repairs to telephone wiring within the customer's home or place of business.

After stating that the representative plaintiffs satisfied prerequisites for a class action mandated by C.R.C.P. 23(a) and (b)(3), the complaint alleged the following pertinent facts. Prior to 1982, inside wire maintenance service was routinely provided by Mountain Bell, but in 1982 the Federal Communications Commission (FCC) issued an order requiring separate billing for component services that traditionally had been covered by a single service charge. The FCC's order was calculated to permit customers to choose among various services offered by their local utility. Following the FCC order, Mountain Bell notified its customers that it would assume each customer wished to continue inside wire maintenance unless Mountain Bell was notified that the service should be discontinued. Silence on the part of the customer, in other words, was deemed by Mountain Bell to be an acceptance of continued inside wire maintenance service.

The complaint stated that Mountain Bell, in utilizing this form of "negative option" contract, engaged in an illegal restraint of trade in violation of the Colorado antitrust statute, §§ 6–4–101 to 6–4–109, 2 C.R.S. (1973 and 1988 Supp.); that Mountain Bell made false or misleading statements of fact concerning the nature, quality, and cost of the inside wire maintenance service in violation of the Colorado Consumer Protection Act, §§ 6–1–101 to 6–1–115, 2 C.R.S. (1973 and 1988 Supp.); that Mountain Bell's "negative option" contract was invalid and its customers were entitled to restitution of all amounts paid for inside wire maintenance service; that Mountain Bell breached the duty of good faith and fair dealing to its customers by failing to fully and adequately explain the inside wire maintenance service contract; and that Mountain Bell defrauded its customers by concealing or negligently misrepresenting material facts concerning the contract. The plaintiffs requested relief in the form of actual and punitive damages, interest, attorney fees, and an injunction prohibiting Mountain Bell from charging for inside wire maintenance service unless and until the company fully disclosed the service plan to the customer and the customer actually assented to the plan.

Mountain Bell answered the complaint by denying all allegations of liability and raising several affirmative defenses, including the statute of limitations and laches, accord and satisfaction, settlement and release, res judicata and collateral estoppel, the Noerr–Pennington doctrine,[2] several juris-

---

**1.** The class in this case consists of all Mountain Bell customers in Colorado between 1982 and August 25, 1988, and thus is broad enough to include members of this court and other trial and appellate judges. Under these circumstances, the rule of necessity prevails over any conceivable basis for disqualification and requires this court to address the issue raised in this proceeding, for otherwise the parties would be deprived of access to the only appropriate judi-

cial forum for resolution of their respective claims regarding the validity of the district court's order with respect to notice to the class. *See United States v. Will,* 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980).

**2.** The Noerr–Pennington doctrine prohibits antitrust prosecution under the Sherman Act for genuine efforts to influence the passage and enforcement of laws, regardless of intent or

dictional defenses, and setoff. Mountain Bell also counterclaimed for the reasonable value of inside wire maintenance service provided to customers pursuant to the service contract. The class plaintiffs denied the allegations of the counterclaim.

The representative plaintiffs requested the court to certify the case as a class action and the court granted the plaintiffs' application, finding as follows: that the plaintiffs had adequately demonstrated that the class is sufficiently large to render joinder impracticable; that there are questions of law and fact common to all members of the class; that the plaintiffs' claims are typical of the claims of the other class members; that the plaintiffs have selected qualified counsel to prosecute the claims; that the factual and legal issues common to the members of the class predominate over any question affecting any individual member of the class; and that, inasmuch as the average claim is between $35 and $50 and the largest is $150, a class action is superior to any other form of litigation for resolving the controversy.

After certifying the case as a class action, the court conducted a hearing on the question of notice to class members. At the hearing the representative plaintiffs advised the court that the cost of individual notice by first-class mail would be in excess of $500,000, and urged the court to direct that notice to class members be accomplished by permitting the plaintiffs to enclose notices of the pending litigation in Mountain Bell's monthly billing envelopes. The plaintiffs acknowledged that they would be responsible for the cost of copying the notice, the cost of enclosing the notices in the envelopes, which was estimated to be between $25 and $42 per thousand envelopes, and any incidental mailing expenses over and above the postage associated with the monthly billing statements. The plaintiffs estimated that, based on the assumption that class notices would be mailed to all of Mountain Bell's residential and business customers, their proposal for providing notice would result in a cost saving to them of approximately $200,000. Over Mountain Bell's objection, the court ordered Mountain Bell to provide space in its monthly billing envelopes for the mailing of notices to class members, with the incremental costs associated with the copying of the notice, the enclosing of the notice in the billing envelopes, and any additional postage charges to be paid by the representative plaintiffs.

The notice which the court directed to be mailed to Mountain Bell customers informs the customer that the court has certified the pending litigation as a class action and describes the class as follows:

> All persons and entities who have been telephone customers of Mountain Bell in Colorado any time since the Federal Communications Commission unbundled inside wire maintenance service in 1982 and who have been charged fees pursuant to Mountain Bell's optional inside wire maintenance service program at any time between the date that optional service took effect and August 25, 1988.

The notice contained the following description of the lawsuit and the effect of the court's ruling on class certification:

### The Case

> Plaintiffs sued Mountain Bell, now doing business as U.S. West Communications ("U.S. West"), alleging that U.S. West acquired and maintains a monopoly over the market for inside wire maintenance and repair services contrary to Colorado antitrust law. Plaintiffs also allege that the inside wire maintenance contracts are void or voidable because of fraud practiced by U.S. West and under principals [sic] of contract law and Colorado deceptive practices law. Plaintiffs have asked for damages and injunctive relief against U.S. West. U.S. West has denied all these claims and charges.

---

purpose, even where the intent is to eliminate competition. *See United Mine Workers of America v. Pennington,* 381 U.S. 657, 669–70, 85 S.Ct. 1585, 1593, 14 L.Ed.2d 626 (1965); *Eastern Railroad Presidents Conference v. Noerr Motor* *Freight, Inc.,* 365 U.S. 127, 135–40, 142–44, 81 S.Ct. 523, 528–31, 532–33, 5 L.Ed.2d 464 (1961); *Protect Our Mountain Environment, Inc. v. District Court,* 677 P.2d 1361, 1365–66 (Colo.1984).

U.S. West has filed a counterclaim against certain members of the class, asserting that if it is required to refund charges paid by subscribers to the inside wire maintenance programs, then it is entitled to recover the value of service calls made to customers who have had their inside wire, including their telephone jacks, serviced or repaired by U.S. West at any time from the date that optional inside wire maintenance service first took effect through August 25, 1988. U.S. West claims that, for certain class members, recovery on its counterclaim may exceed Plaintiffs' recovery against it. Plaintiffs have denied U.S. West's counterclaim or that recovery by U.S. West on its counterclaim might exceed Plaintiffs' recovery against U.S. West.

### Class Action Ruling

Without expressing its views concerning the merits of Plaintiffs' claims or U.S. West's counterclaim, the Court has ruled that this lawsuit may proceed as a claim for damages and punitive damages, injunctive relief, attorneys' fees and costs, not only by the Plaintiffs but also on behalf of the class as defined above. The Court also has ruled that the Plaintiffs named in the caption above may act as representatives of the class and their attorneys, Robert J. Dyer, III, George Gary Duncan, James A. Shpall and Lawrence Walner, may act as counsel for the class.

Establishment by the Court of this class does not mean that any money or injunctive relief will be obtained for U.S. West's inside wire maintenance and repair service customers, for these are contested issues which have not been decided. Rather, the ruling means that the ultimate outcome of this lawsuit—whether favorable to the Plaintiffs or to U.S. West—will apply in like manner to the class members; that is, all U.S. West inside wire maintenance and repair service customers described above who do not timely elect to be excluded from the class.

The notice also informed customers that they could elect to be excluded from the class by signing and returning an enclosed "Exclusion Request" and thereby not share in any recovery that might be paid to customers or be subject to Mountain Bell's counterclaim, or, alternatively, they could elect to be included in the lawsuit by not returning the "Exclusion Request." [3]

3. The election portion of the notice stated:

*Election by Class Members*

If you fit the above description of a Plaintiff class member, you have a choice whether or not to remain a member of the class. Either choice will have its consequences, which you should understand before making your decision.

*If you want to be excluded from the plaintiff class and taken out of this lawsuit,* you must complete the enclosed form ("Exclusion Request") and return it to District Court Clerk's Office, City and County Building, 1437 Bannock Street, Denver, 80202, by mail postmarked no later than _____, 19__.

By making this election to be excluded, (1) you will not share in any recovery that might be paid to U.S. West customers as a result of trial or settlement of this lawsuit; (2) you will not be subject to U.S. West's counterclaim; (3) you will not be bound by any decision of this lawsuit favorable to U.S. West; and (4) you may present any claims you have against U.S. West by filing your own lawsuit or you may seek to intervene in this lawsuit.

*If you want to remain a member of the plaintiff class and be included in this lawsuit,* you should NOT file the "Exclusion Request" and *you are not required to do anything at this time.*

By remaining a class member, any claims against U.S. West for damages as alleged in the Complaint will be determined in this case and cannot be presented in any other lawsuit.

The notice also contained a section dealing with the rights and obligations of class members, which stated:

*Rights and Obligations of Class Members*

If you remain a member of the class:

Plaintiffs and their attorneys will act as your representatives and counsel for the presentation of the charges against U.S. West. If you desire, you may appear by your own attorney. You may also seek to intervene individually and may advise the Court if at any time you consider that you are not being fairly and adequately represented by Plaintiffs and their attorneys.

Your participation in any recovery which may be obtained from U.S. West through trial or settlement will depend upon the results of this lawsuit. If no recovery is obtained for the class, you will be bound by that result also. Your liability, if any, on U.S. West's Counter-

Mountain Bell thereafter filed this original proceeding. Mountain Bell contends that the court's order with respect to notice violates its First Amendment rights under the United States Constitution because the order requires Mountain Bell to make its billing envelopes accessible to a group of persons with which Mountain Bell disagrees for the purpose of disseminating a message antagonistic to Mountain Bell's interests, and thereby associates Mountain Bell with the undesirable message; and that, alternatively, even if the court could legitimately curtail Mountain Bell's First Amendment interests by an order regarding notice, the order in this case was not narrowly tailored to serve any compelling or other significant interest of the state.

## II.

Before examining the merits of Mountain Bell's First Amendment claims, it will be helpful to review the procedural requirements for class action certification, and also to consider whether it is ever appropriate to require a defendant in a class action to perform the task of mailing class notices to members of the class.

## A.

■ The basic purpose of a class action is to eliminate the need for repetitious filing of many separate lawsuits involving the interests of large numbers of persons and common issues of law or fact by providing a fair and economical method for disposing of a multiplicity of claims in one lawsuit. This purpose is realized by permitting one or more members of the class to sue or be sued on behalf of all class members. Given the representative nature of the class action, due process considerations require that adequate notice of the action be given to class members, for only in this way can the binding effect of any judgment, whether favorable or unfavorable, be fairly extended to class members.

claim will depend on the results of this lawsuit.
You may be required as a condition to participating in any recovery through settlement or trial to present evidence respecting your status as a U.S. West customer.

*See generally Developments in the Law— Class Actions,* 89 Harv.L.Rev. 1318, 1394–1416 (1976).

Rule 23 of the Colorado Rules of Civil Procedure, which is virtually identical to Fed.R.Civ.P. 23, provides the procedural standards for the filing and maintenance of a class action. Since Fed.R.Civ.P. 23 is the model for the Colorado counterpart of the rule, we properly may give considerable deference to the federal interpretation of Fed.R.Civ.P. 23 in our analysis of the Colorado rule. *E.g., Harding Glass Co. v. Jones,* 640 P.2d 1123, 1125 n. 3 (Colo.1982).

C.R.C.P. 23(a) permits one or more members of a class to sue or be sued as representative parties on behalf of all only if:

(1) The class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

A case is maintainable as a class action if, in addition to satisfying the four prerequisites of C.R.C.P. 23(a), the claim falls within one of the following categories of C.R.C.P. 23(b):

(1) The prosecution of separate actions by or against individual members of the class would create a risk of:

(A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or

(B) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interest; or

You will be entitled to notice of any ruling reducing the size of the class and also to notice of, and an opportunity to be heard respecting, any proposed settlement or dismissal of the class claims.

(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(A) The interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) The difficulties likely to be encountered in the management of class action.

C.R.C.P. 23(c) requires the court to determine as early as practicable after the commencement of the action whether the case is to be maintained as a class action. "The decision of whether to certify a class action lies within the discretion of the trial court and will not be disturbed unless the decision is clearly erroneous and an abuse of discretion." *Friends of Chamber Music v. City and County of Denver,* 696 P.2d 309, 317 (Colo.1985). An order certifying a case as a class action may be conditional and subject to amendment before the final decision on the merits of the case. C.R.C.P. 23(c)(1).

If the court certifies the case as a class action and the class action is maintained pursuant to C.R.C.P. 23(b)(3) (predominance of questions of fact or law common to class members and superiority of class action over other forms of adjudication), C.R.C.P. 23(c)(2) requires the court to direct to members of the class "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." C.R.C.P. 23(c)(2) further provides:

The notice shall advise each member that: (A) The court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.

A class member who opts out of a class is not bound by a judgment unfavorable to the class and may not participate in the benefits of a favorable judgment. R. Hardaway and S. Hyatt, 4 *Colorado Practice* 242 (1985). When a lawsuit is maintained as a class action, C.R.C.P. 23(c)(3) requires the judgment to include and describe those whom the court finds to be members of the class and also to include and specify those to whom notice was directed who have not requested exclusion and are still members of the class.

C.R.C.P. 23(d) authorizes the court to make appropriate orders designed "for the protection of members of the class or otherwise for the fair conduct of the case" and to impose conditions on the representative parties to the action. The court's authority under Rule 23(d) includes the power to order one of the parties to perform the tasks necessary to notify members of the class of the impending lawsuit. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 354, 98 S.Ct. 2380, 2391, 57 L.Ed.2d 253 (1978).

### B.

The mandatory notice provisions of C.R.C.P. 23(c)(2) are designed to fulfill due process requirements to which the class action procedure is subject, since without such notice class members might be unaware of litigation affecting their rights and obligations. *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 173–74, 94 S.Ct. 2140, 2150–51, 40 L.Ed.2d 732 (1974). In order to ensure adequate notice to the class, the notice must be given to each identifiable class member. *Id.* at 175, 94 S.Ct. at 2151.

In *Oppenheimer Fund*, 437 U.S. 340, 98 S.Ct. 2380, the United States Supreme Court held that as a general rule the representative plaintiff should perform the tasks necessary for notification, since it is the plaintiff who seeks to maintain the suit as a class action and to represent other members of the class, but that in some instances "the defendant may be able to perform a necessary task with less difficulty or expense than could the representative plaintiff." 437 U.S. at 356, 98 S.Ct. at 2392. In these latter instances, a court is vested with discretion under Rule 23(d) to order the defendant to perform tasks necessary to notification. *Id.* at 355–56, 98 S.Ct. at 2391–92. Since identification of class members is simply "another task that must be performed in order to send notice," Fed.R.Civ.P. 23(d), in the Court's view, "authorizes a district court in appropriate circumstances to require a defendant's cooperation in identifying the class members to whom notice must be sent." *Id.* at 355, 98 S.Ct. at 2391.

In cases where a court properly decides that the defendant, rather than the representative plaintiff, should perform a task necessary to notification, the question arises as to which party should bear the expense of notification. Since it is the representative plaintiff who seeks to maintain the suit as a class action, the general rule is that the plaintiff should bear the costs relating to the sending of notice, although here again, as the Supreme Court recognized in *Oppenheimer Fund*, 437 U.S. at 358–59, 98 S.Ct. at 2393, there may be special circumstances which militate against shifting the cost of notification to the representative plaintiff. In some cases, for example, "the expense involved may be so insubstantial as not to warrant the effort required to calculate it and shift it to the representative plaintiff." *Id.* at 359, 98 S.Ct. at 2393. In other instances it may be appropriate to leave the cost of notification where it presently is "because the task ordered is one that the defendant must perform in any event in the ordinary course of its business." *Id.* *Oppenheimer Fund* thus stands for the proposition that in a case where a defendant can perform the task of sending notices to class members by simply enclosing the notices in the defendant's periodic mailings to class members, at no additional or at most insubstantial expense to the defendant, a court is certainly justified in requiring the defendant, rather than the representative plaintiff, to perform the task of mailing the class notices to class members.

Based on the Supreme Court's analysis of Fed.R.Civ.P. 23 in *Oppenheimer Fund*, 437 U.S. 340, 98 S.Ct. 2380, we are satisfied that, although ordinarily the representative plaintiff should bear all costs relating to the sending of the notice of the class action, there are cases in which it is appropriate to relieve the plaintiff of the burden of such costs and to require the defendant to perform the task of sending the class notices to class members. Putting aside for the present the First Amendment claim raised by Mountain Bell, the litigation involved in this proceeding appears to be such a case. Because the representative plaintiffs in the class action would incur such substantial costs in mailing the notices as to possibly preclude the litigation entirely, and because Mountain Bell has the ability to notify the class members, at no significant additional expense to itself, by merely enclosing the class notices in billing envelopes routinely sent to its customers, the district court acted within the discretion granted to it by C.R.C.P. 23(d) when it required Mountain Bell to send the notices of the class action to the class members.

### III.

We turn now to Mountain Bell's argument that the court's order regarding notice violates the company's First Amendment rights under the United States Constitution because the order requires Mountain Bell to make its billing envelopes accessible to a group of persons with which it disagrees for the purpose of disseminating a message antagonistic to its own interests, and thereby associates Mountain Bell with the message. We are unpersuaded by Mountain Bell's argument.

## A.

The First Amendment guarantee of free speech protects not only the voluntary expression of ideas but also the right not to express those ideas publicly. *Harper and Row, Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 559, 105 S.Ct. 2218, 2230, 85 L.Ed.2d 588 (1985). Because the identity of the speaker is not decisive in determining the scope of First Amendment protections, it necessarily follows that corporations as well as individuals are entitled to the protections of the First Amendment. *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 784–85, 98 S.Ct. 1407, 1420, 55 L.Ed.2d 707 (1978). This protection obviously extends to a government-regulated public utility. *Pacific Gas and Electric Corp. v. Public Utilities Commission,* 475 U.S. 1, 8, 106 S.Ct. 903, 907, 89 L.Ed.2d 1 (1986); *Consolidated Edison Co. v. Public Service Commission,* 447 U.S. 530, 533–35, 100 S.Ct. 2326, 2330–32, 65 L.Ed.2d 319 (1980).

The protections of the First Amendment applicable to speech dealing with commercial transactions, however, are less extensive than those applicable to noncommercial speech. *Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 637, 105 S.Ct. 2265, 2274, 85 L.Ed.2d 652 (1985); *Central Hudson Gas & Electric Corp. v. Public Service Commission,* 447 U.S. 557, 563–64, 100 S.Ct. 2343, 2350, 65 L.Ed.2d 341 (1980). The government may place restrictions on commercial speech, including requirements dealing with the amount and quality of information which a business entity must make available to consumers, as long as such restrictions are reasonably related to a substantial governmental interest. *See Board of Trustees of State University of New York v. Fox,* — U.S. —, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989) (restriction on commercial speech need only be reasonably related to substantial governmental interest—that is, the fit need not be the single best disposition but one whose scope is in proportion to the interest served); *Zauderer,* 471 U.S. 626, 105 S.Ct. 2265 (requirement that attorneys who advertise for contingent fee cases disclose client's obligation to pay costs and expenses not violative of First Amendment rights of attorneys, since such disclosure is reasonably related to state's substantial interest in preventing deception to consumers). There can be no doubt that the interest of the state in eliminating the adverse consequences of repetitious litigation involving basically identical issues by providing potential class members with adequate notice, consistent with due process of law, of the appropriate procedure for resolving their claims in one pending lawsuit, or be forever barred from later asserting these claims, is indeed substantial. Thus, while a company such as Mountain Bell, which is engaged in the business of selling utility services to the public, is not without some constitutionally protected interest in the contents of a court-ordered notice of a class action involving a commercial transaction between the company and its customers, the extent of constitutional protection accorded that interest certainly can be no greater than the protection applicable to commercial speech.

## B.

Mountain Bell's First Amendment rights are not violated by the respondent court's order regarding notice. To be sure, the order requires Mountain Bell to provide the representative plaintiffs with access to its billing envelopes for purposes of notifying the class members of the pending litigation. Requiring Mountain Bell to enclose the class notices in their billing envelopes, however, is the very type of order contemplated by C.R.C.P. 23(c)(2), which mandates that the court "direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Such notice does no more than provide Mountain Bell customers with factually accurate information with respect to their right to join in or be excluded from pending litigation over inside wire maintenance service—a matter directly bearing on the commercial relationship between Mountain Bell and its customers—and is reasonably relat-

ed to the substantial governmental interest of providing a fair and cost-effective method for resolving a multitude of claims involving common issues of fact or law in one lawsuit, thereby preventing the unnecessary waste of judicial resources in repetitious litigation.

We recognize that under some circumstances controlled access to a company's billing envelopes for purposes of transmitting a message antagonistic to the interests of the company might impermissibly abridge the First Amendment rights of the company. There is nothing about the nature or content of the notice in this case, however, that is violative of Mountain Bell's right to free speech. The notice involved here is a message from the court, calculated to inform Mountain Bell customers of the nature of the pending litigation in which the customers might have some interest. Mountain Bell may protest and contest the filing of the lawsuit, but it has no basis to disagree with the fact that a class action complaint has been filed against it by some of its customers. The content of the notice clearly and succinctly sets forth the claims of the representative plaintiffs, Mountain Bell's denial of these claims and its counterclaim, and the options available to Mountain Bell customers as members of the class. There is no danger under these circumstances that a customer would somehow construe the notice as an endorsement by Mountain Bell of the class action or a concession on its part that the pending lawsuit has merit. Neither the court's order on notice nor the notice itself places Mountain Bell in the position of associating with the allegations of the complaint or with any message with which it disagrees.

While the First Amendment does not distinguish between a compulsion to respond to statements of fact and a compulsion to respond to an opinion, *Riley v. National Federation of the Blind,* —— U.S. ——, ——, 108 S.Ct. 2667, 2677–78, 101 L.Ed.2d 669, 689–90 (1988), the plain fact is that the class action notice does not place Mountain Bell under a compulsion to respond to any aspect of the notice. The notice merely provides class members with objectively neutral information relevant to pending litigation affecting public utility customers and does not place Mountain Bell in a situation of being compelled to respond to a message when it might otherwise have preferred to remain silent.[4]

### C.

Mountain Bell places much reliance for its argument on the plurality opinion of Justice Powell in *Pacific Gas and Electric Co. v. Public Utilities Commission,* 475 U.S. 1, 106 S.Ct. 903, 89 L.Ed.2d 1 (1986). When we analyze Justice Powell's opinion against the backdrop of the factual circumstances of that case, however, it is quite obvious that Mountain Bell's reliance is misplaced.

In *Pacific Gas and Electric,* the Supreme Court considered whether the California Public Utilities Commission could require a private utility company to include in its billing envelopes the messages of a

---

**4.** Mountain Bell cites DR 7–104 to support its claim that it is powerless to respond freely to the class action notice because of restrictions placed on communications between parties to impending litigation. On its face, DR 7–104 applies only to contacts between attorneys and opposing parties:

*Communicating With One of Adverse Interest.*

(A) During the course of his representation of a client a lawyer shall not:

(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

Mountain Bell also argues that it is powerless to respond freely to the class members because as a class action defendant it is prohibited from communicating with class members on an *ex parte* basis regarding the substance of the lawsuit. Without deciding whether Mountain Bell is correct in its assumption, we merely point out that any such restrictions, to the extent that they might be applicable at all, would apply regardless of whether or not the class notice is mailed in Mountain Bell's billing envelopes. Any asserted limitations on Mountain Bell's ability to communicate with its customers on the class action, in other words, would arise from the nature of the class action litigation and the litigation posture of the parties, and not from the district court's order on notice.

third party, a consumer interest group named Toward Utility Rate Normalization (TURN), with which the utility disagreed. The California Public Utilities Commission had ruled that the extra space in the utility's billing envelopes belonged to the ratepayers and that this space should be apportioned between the public utility and its customers by permitting TURN to use the space four times a year for two years, with no restrictions placed on the content of TURN's messages except a statement to the effect that the messages were not those of the public utility. In vacating the commission's order, the plurality of the Court initially noted that "[c]ompelled access like that ordered in this case both penalizes the expression of particular points of view and forces speakers to alter their speech to conform with an agenda they do not set." 475 U.S. at 9, 106 S.Ct. at 908. The plurality then went on to conclude that the commission's order was inconsistent with the First Amendment rights of the public utility in several particulars: it was not content-neutral, in that it discriminated on the basis of the viewpoints of the members of TURN, which were expressly contrary to the views of the public utility; it impermissibly required the public utility to associate with a message with which it disagreed and to use its property

to disseminate the message; and the order burdened the free speech rights of the public utility, but was not narrowly tailored to serve any compelling state interest. In the course of his opinion, however, Justice Powell expressly acknowledged that the commission's order was readily distinguishable from orders requiring a public utility to carry "various legal notices," noting that a state "has substantial leeway in determining appropriate information disclosure requirements for business corporations." 475 U.S. at 15 n. 12, 106 S.Ct. at 911 n. 12.[5]

The facts of the instant case are significantly different from those in *Pacific Gas and Electric*.[6] The notice in this case is devoid of economic, ideological, or political advocacy. What we are dealing with here is a legal notice emanating from the court—a notice not only authorized but expressly required by C.R.C.P. 23(c)(2). The notice simply advises Mountain Bell customers of the pending class action and gives them necessary information and direction regarding their right to be excluded or included as members of the class. In short, the notice contains the very type of information contemplated by C.R.C.P. (23)(c)(2) and is reasonably related to the substantial interest of the state in providing adequate notice to class members of a

---

**5.** The plurality opinion's exceptions for legal notices are reinforced in a concurrence and a dissent to *Pacific Gas and Electric*. Justice Marshall recognized the State has a compelling interest in requiring utilities "to carry messages concerning utility ratemaking and the rights of utility customers." 475 U.S. at 23 n. 2, 106 S.Ct. at 915 n. 2 (Marshall, J., concurring in the judgment). Justice Stevens also assumed the plurality would permit regulations requiring a utility "to disseminate legal notices of public hearings and ratemaking proceedings." 475 U.S. at 38, 106 S.Ct. at 923. (Stevens, J., dissenting).

Mountain Bell argues that the legal notices to which the court refers in *Pacific Gas and Electric*, 475 U.S. 1, 106 S.Ct. 903, are markedly different from class notices because the legal notices are not adversarial in nature. We are not persuaded by this purported distinction. Proceedings before the Public Utilities Commission can be highly adversarial. The commission may, upon its own motion or on complaint, hold a hearing to investigate rates or practices of a public utility in order to determine whether the rates are "unjust, unreasonable, discrimina-

tory, or preferential, or in any way violate any provision of law." § 40-3-111(1), 17 C.R.S. (1984). Although such a hearing might well be adverse to Mountain Bell's interests, Mountain Bell concedes that it would be required to disseminate notice of such proceedings to its customers.

**6.** Mountain Bell also relies on *Central Illinois Light Co. v. Citizens Utility Board*, 827 F.2d 1169 (7th Cir.1987), to support its argument. That case involved an Illinois state law (CUB Act) requiring utilities to enclose Citizens Utility Board messages soliciting membership and dues in monthly billing envelopes. The court of appeals, citing *Pacific Gas and Electric*, 475 U.S. 1, 106 S.Ct. 903, found the forced enclosures violated the utilities' First Amendment rights, noting the CUB Act was in all material respects "constitutionally indistinguishable from the PUC order struck down by the Court in *Pacific Gas*." 827 F.2d at 1174. We conclude that *Central Illinois Light* is not dispositive in the instant case for the same reasons that *Pacific Gas and Electric* is not controlling.

fair and cost-effective method for resolving their claims.

## IV.

We need not labor long over Mountain Bell's alternative argument that, even if the district court could have permissibly burdened Mountain Bell's free speech rights by requiring it to perform some of the tasks necessary to effectuate notice to class members, the court's order in this case was made out of a concern for the economic interest of the plaintiffs and was not narrowly tailored to serve any compelling or other significant interest of the state. We find this argument unavailing for several reasons.

Mountain Bell's argument assumes that a court is prohibited from weighing the expense factor in resolving the appropriate form of notice to class members. As *Oppenheimer Fund* makes clear, a court may properly consider the cost of effectuating notice and may determine that the expense involved is "so insubstantial as not to warrant the effort required to calculate it and shift it to the representative plaintiff." 437 U.S. at 359, 98 S.Ct. at 2393. Mountain Bell also incorrectly assumes that its rights of free speech were burdened by the order entered in this case. As we have already discussed, the district court's order regarding notice is expressly authorized by C.R. C.P. 23(c)(2) and is reasonably related to the state's substantial interest in providing a fair and cost-effective method for resolving class action litigation. Finally, since we are dealing here with a legal notice directed by the court to class members—and not with economic, ideological, or political advocacy emanating from a third party and expressly contrary to the views of the company ordered to mail the message to its customers—the "strict scrutiny-compelling state interest" analysis employed by the Supreme Court in *Pacific Gas & Electric* is not the controlling standard for resolving this case. *See Board of Trustees of State University of New York*, 109 S.Ct. 3028.

In light of the fact that the basic purpose of class action litigation is to provide a fair and economical method for permitting a multitude of claims affecting a large number of persons to be litigated in one lawsuit, we view the district court's order on notice as one capably fashioned in a manner that, on the one hand, effectively provides members of the class with notice of pending litigation that might well affect their legal interests and, on the other hand, does not infringe on the legitimate First Amendment interests of Mountain Bell. We thus conclude that, under the particular circumstances of this case, the district court did not err in requiring Mountain Bell to provide space in its monthly billing envelopes for class notices concerning the pending litigation. The rule to show cause is accordingly discharged.