[No. A108321. First Dist., Div. Two. May 5, 2005.]

HYPERTOUCH, INC., Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
PERRY JOHNSON, INC., Real Party in Interest.

1528

COUNSEL

Law Offices of John L. Fallatt, John L. Fallat and Kathleen A. Umrein for Petitioner.

No appearance for Respondent.

Epstein, Becker & Green, Joseph D. Miller, Leslie J. Mann; Pilchak Cohen & Tice and Daniel G. Cohen for Real Party in Interest.

OPINION

**KLINE, P. J.**—This writ proceeding arises out of a class action alleging the sending of unsolicited advertisements to a telephone facsimile machine in violation of the Telephone Consumer Protection Act of 1991 (TCPA) (47 U.S.C. § 227(b)(1)(C)), which authorizes a private right of action in state court. (*Id.*, § 227(b)(3).)

Petitioner Hypertouch, Inc., a California corporation based in Redwood City, is the named plaintiff, and real party in interest Perry Johnson, Inc., a consulting company that does business in California, is the defendant. In addition to actual and punitive damages, and injunctive relief, plaintiff seeks statutory damages of $500 for each violation of the TCPA, and treble that amount for each willful violation. (47 U.S.C. § 227(b)(3).) The complaint also alleges

causes of action for civil conspiracy and unfair business practices. (Bus. & Prof. Code, § 17200 et seq.)

Plaintiff seeks writ relief from the trial court order approving notice to the class insofar as it provides that, in order to participate in this civil action, individual members of the certified class "must opt-in to same and not opt-out," and the judgment "will only bind those class members that opt-in." Plaintiff maintains the "opt-in" requirement is constitutionally unnecessary and "eviscerates the class action device." We agree and shall therefore grant a peremptory writ.

## FACTS AND PROCEEDINGS BELOW

On September 11, 2000, the Federal Communications Commission (FCC) cited defendant for violating the TCPA by sending an unsolicited advertisement to a telephone facsimile machine, and by failing to comply with provisions of the TCPA and FCC rules requiring any person or entity sending a message via a telephone facsimile machine to clearly include in the message "an identification of the business, other entity, or individual sending the message and the telephone number of the sending machine or of such business, other entity, or individual." (47 U.S.C. § 227(d)(1)(B); 47 C.F.R. § 68.318(d) (2004).)

Shortly after the complaint was filed on October 9, 2001, plaintiff commenced discovery to obtain, among other things, the database containing the telephone numbers to which defendant sent unsolicited advertisements by telephone facsimile machines (the fax database). Defendant objected on the ground the database was a customer list containing confidential information and therefore privileged as a "trade secret." (Civ. Code, § 3426.1, subd. (d).) Judge Rosemary Pfeiffer agreed and denied plaintiff's motion to compel discovery of the fax database.[1] On February 27, 2003, after determining that plaintiff had nevertheless established an "ascertainable class" with "a well-defined community of interest in the questions of law and fact involved affecting all the parties to be represented," Judge Pfeiffer granted plaintiff's motion for class certification. On July 3, 2003, Judge Marc R. Forcum issued a temporary restraining order prohibiting defendant from continuing to send unsolicited advertisements by facsimile, and on August 28, 2003, Judge George A. Miram issued a preliminary injunction extending that prohibition. Discovery was for the most part supervised by Judge Beth L. Freeman, who ruled on several motions to compel answers to interrogatories. After plaintiff

---

[1] Plaintiff sought writ relief from the denial of discovery, which was denied by a divided vote of this court.

learned defendant had destroyed the database containing the phone numbers from which persons called to request that defendant cease sending facsimiles (the do not fax database), which was apparently done in the ordinary course of business, plaintiff issued subpoenas duces tecum to defendant's telecommunication service providers, Global Crossing and Qwest Communications, requesting the phone numbers contained in the do not fax database. Defendant's motion to quash the subpoenas was denied by Judge Quentin Kopp on November 6, 2003. Global Crossing provided plaintiff the phone numbers from which 29,549 persons called defendant's toll-free number requesting the cessation of facsimile advertisements, and Qwest Communications supplied 112,500 such phone numbers.

Plaintiff moved for an order approving notice to the certified class on December 24, 2003. The motion papers asserted that defendant had destroyed relevant evidence revealing the identity of thousands of class members but that, by subpoenas to defendant's telecommunication service providers, plaintiff discovered the telephone numbers from which approximately 142,049 prospective members of the class called defendant's toll-free number asking to be removed from its facsimile database. Plaintiff proposed that—due to defendant's destruction of its do not fax database, its use of a trade secret privilege to refuse to disclose the database of numbers to which unsolicited facsimiles were sent, and its greater financial resources—the cost of identifying and noticing class members should be borne by defendant. Plaintiff also submitted the declaration of Dan Rosenthal, the owner of Rosenthal & Company, a claims administrator, who estimated he would be able to obtain the names and addresses of 40 to 60 percent of the 142,049 persons who called defendant's toll-free number asking to be removed from the list that defendant used to send unsolicited facsimile messages. Estimating that 20 percent of the 142,049 calls were duplicate, Rosenthal believed his company could obtain approximately 45,500 to 68,200 different names and addresses. Plaintiff proposed that the class members Rosenthal was able to identify receive personal notice by first-class mail and that additional notice be published one time in USA Today, the largest national daily newspaper. Rosenthal would provide a toll-free automated telephone response system and a Web site to provide prospective class members access to information, and process the requests of persons who wished to be excluded from the class. The estimated cost of Rosenthal & Company's proposed services was between $107,400 and $122,900.

Plaintiff's motion for an order approving notice to the class was considered by Judge Carol Mittelsteadt. In an order dated October 13, 2004, Judge Mittelsteadt found that "[t]he stake of individual members is substantial and personal notification is necessary, and the plaintiff's proposed manner of giving notice does not satisfy due process requirements." This finding created a problem, however, because members of the class previously certified by

Judge Pfeiffer could not be identified and personal notification was therefore impossible. Judge Mittelsteadt sought to resolve this problem by ordering that notice be given by publication and class members who wish to be included in the action must "opt-in." The court appears to have reasoned that the affirmative act of "opting in" confirms receipt of the "actual notice" the court believed was constitutionally necessary.

The court appointed Rosenthal & Company class administrator, ordered plaintiff to pay the cost of publication of notice in USA Today and, also at its own expense, to "create a website setting the Notice of Pendency of Class Action and the means by which class members opt-in, including by electronic-mail addressed to Rosenthal & Company," and to "attempt to place the Notice of Pendency of Class Action on as many junk fax websites as possible with the opportunity for class members to opt-in the class by electronic e-mail." The order states that "class members must opt-in to the class action no later than January 7, 2005," and directs that the publication of notice in USA Today must occur "at least 30 days prior to the opt-in deadline for class members."

On November 15, 2004, plaintiff petitioned this court for a writ of mandate or an alternate writ directing respondent court to vacate its order requiring class members to "opt-in" rather than "opt-out" of the certified class. The petition maintains that requiring prospective class members to act affirmatively in order to participate in this action "defeats the purpose of the class action device and the goal of judicial economy," and is not required by the due process clause of the Fourteenth Amendment.

We issued an order to show cause why a peremptory writ of mandate should not issue as prayed for in the petition and stayed the trial court's order of October 13, 2004.

As we shall explain, the "opt-in" requirement is not necessitated by due process, conflicts with the applicable rules of court, and undermines the purpose of class actions.

## DISCUSSION

### I.

### *Standard of Review*

■ A trial court has broad discretion to determine the manner of notice in class actions. (Cal. Rules of Court, rule 1856 (hereinafter, California rule 1856).) We review the ruling for abuse of discretion. (*Wershba v. Apple*

*Computer, Inc.* (2001) 91 Cal.App.4th 224, 251 [110 Cal.Rptr.2d 145].) " 'The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.' " (*Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19, 25 [97 Cal.Rptr.2d 797].) To the extent the trial court's ruling is based on assertedly improper criteria or incorrect legal assumptions, we review those questions de novo. (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435–436 [97 Cal.Rptr.2d 179, 2 P.3d 27].)

The purely legal questions presented for our independent review are whether, as the trial court found, the "opt-in" requirement was mandated by the due process clause of the Fourteenth Amendment and whether the requirement is authorized by or consistent with the California Rules of Court relating to the management of class actions. (Cal. Rules of Court, rules 1850–1861.)

## II.

### *The "Opt-in" Requirement Is Not Mandated by Due Process*

The trial court imposed the "opt-in" requirement on the theory that members of the class holding a substantial stake could not constitutionally be bound by the judgment unless they had affirmatively agreed to be bound. The court acknowledged that "opt out is one of the things that the courts recognize as satisfying due process and being a very important factor in order to give res judicata effect to the [judgment];" but believed the right to "opt-out" satisfied due process only in situations in which most class members had been identified and could therefore be personally notified, or where members who could not be personally notified had an insubstantial stake in the issue to be litigated.

The trial court found that, unlike most large class actions, individual members of the class certified in this case did not all have an insubstantial stake. Due to the statutory damages provided for by the TCPA—$500 for each violation and up to three times that amount for each willful violation (47 U.S.C. § 227(b)(3))—and the possibility some class members might have suffered multiple violations, the trial court believed some class members might have such a significant economic interest in the litigation that they would wish to litigate individually. In the court's view, personal notification

could be dispensed with, and substitute notice provided, only in cases in which "the stake of individual class members is insubstantial." (Cal. rule 1856(e).) Since this was not the case, the court reasoned, "personal notification"—i.e., "actual notice"—was required.

The court's conclusion that the ordinary rule—that due process does not require actual notice to parties who cannot reasonably be identified (7B Wright et al., Federal Practice and Procedure (2d ed. 1986) § 1786, pp. 188–209; 2 Weinberger on Class Actions (3d ed.) §§ 4.46, 8.01–8.04; Fed. Jud. Center, Manual for Complex Litigation (3d ed. 1995) § 30.211, pp. 224–227)—does not apply in this case was based on its reading of *Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797 [86 L.Ed.2d 628, 105 S.Ct. 2965] (*Shutts*) and *Cooper v. American Sav. & Loan Assn.* (1976) 55 Cal. App. 3d 274 [127 Cal. Rptr. 579].

In *Shutts*, a Kansas trial court certified a class consisting of 33,000 persons each of whom received notice by first class mail describing the action and informing each member that he or she could appear in person or by counsel, that otherwise class members would be represented by plaintiffs, and that members would be included in the class and bound by the judgment unless they "opted-out" of the action by returning a "request for exclusion." The final class consisted of approximately 28,000 members, who resided in all 50 states and the District of Columbia, and several foreign countries. The defendant and petitioner contended that unless out-of-state plaintiffs affirmatively consented, Kansas courts lacked jurisdiction over their claims. According to the petitioner, the failure to execute a " 'request for exclusion' " could not constitute consent of the out-of-state plaintiffs, who lacked sufficient " 'minimum contacts' " with Kansas. Emphasizing that Kansas had no prelitigation contact with many of the plaintiffs and leases involved, the petitioner argued that Kansas exceeded its jurisdictional reach and thereby violated the due process rights of the absent plaintiffs. (*Shutts, supra,* 472 U.S. at p. 806.) These arguments were rejected.

█ The Supreme Court explained at some length the ways in which the burdens a state places upon an absent defendant in a normal civil suit far exceed those it places upon an absent class action plaintiff. Because the burdens placed on an absent defendant in a normal suit are so great, the minimum contacts requirement of the due process clause prevents the state from unfairly imposing them on the defendant. (*Shutts, supra,* 472 U.S. at p. 808.) However, the court went on to explain, a class action plaintiff is in a very different posture, which is why a class action is not subject to the rule that one cannot be bound by an in personam judgment unless one is made fully a party in the traditional sense. As stated in *Shutts*, unlike a defendant in an ordinary civil suit, "an absent class-action plaintiff is not required to do

anything. He may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection. In most class actions an absent plaintiff is provided at least with an opportunity to 'opt out' of the class, and if he takes advantage of that opportunity he is removed from the litigation entirely." (*Id.* at pp. 810–811.) The Supreme Court validated the Kansas procedure at issue in *Shutts* because the notice given class members informed them that they "would be included in the class and bound by the judgment unless they 'opted out' by executing and returning a 'request for exclusion' that was included in the notice." (*Id.* at p. 811.)

■ *Shutts* explicitly rejects the contention "that the Due Process Clause of the Fourteenth Amendment requires that absent plaintiffs affirmatively 'opt in' to the class, rather than be deemed members of the class if they do not 'opt out,'" observing that "such a contention is supported by little, if any precedent." (*Shutts, supra,* 472 U.S. at p. 812.) Reaffirming the due process requirements set forth in *Hansberry v. Lee* (1940) 311 U.S. 32 [85 L.Ed. 22, 61 S.Ct. 115]—that notice "must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'" (*Shutts,* at p. 812, quoting *Mullane v. Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306, 314–315 [94 L.Ed. 865, 70 S.Ct. 652]; cf. *Eisen v. Carlisle & Jacquelin* (1974) 417 U.S. 156, 174–175 [40 L.Ed.2d 732, 94 S.Ct. 2140]),[2]—the *Shutts* court established the constitutionality of the "opt-out" procedure prescribed by the 1966 amendments to rule 23 of the Federal Rules of Civil Procedure (hereinafter, federal rule 23) for class actions predominantly for money damages, which replaced a regime in which the defendant's exposure could be limited to individuals who had actively pushed their own claims. (Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)* (1967) 81 Harv. L.Rev. 356, 397–398.)

The trial court's reliance on *Shutts* is puzzling. Nothing in the opinion suggests that the due process rights of absent parties vary with the size of their stake, such that a class member with an insubstantial stake may be bound by a judgment he or she did not affirmatively agree to be bound by, but a member with a substantial stake cannot. On the contrary, *Shutts* repudiates the view that class members with a substantial stake have such a greater due process right. As stated in *Shutts,* "[r]equiring a plaintiff to affirmatively request inclusion would probably impede the prosecution of those class actions involving an aggregation of small individual claims, where a large

---

[2] *Shutts* also reiterates language in *Hansberry v. Lee* indicating that the touchstone of due process in class actions, the factor that most justifies exception to actual notice, is the adequacy of class representation. (*Shutts, supra,* 472 U.S. at p. 812, citing *Hansberry v. Lee, supra,* 311 U.S. at pp. 42–43.)

number of claims are required to make it economical to bring suit. [Citation.] The plaintiff's claim may be so small, or the plaintiff so unfamiliar with the law, that he would not file suit individually, nor would he affirmatively request inclusion in the class if such a request were required by the Constitution. *If, on the other hand, the plaintiff's claim is sufficiently large or important that he wishes to litigate it on his own, he will likely have retained an attorney or have thought about filing suit, and should be fully capable of exercising his right to 'opt out.'* " (*Shutts, supra,* 472 U.S. at pp. 812–813, fn. omitted, italics added.) The court then went on to conclude that "the Constitution does not require more to protect what must be the somewhat rare species of class member who is unwilling to execute an 'opt out' form, but whose claim is nonetheless so important that he cannot be presumed to consent to being a member of the class by his failure to do so." (*Id.* at p. 813.)

The Kansas rule at issue in *Shutts,* like California rule 1856(e), follows federal rule 23, which mandates the provision of individual notice only "to all members *who can be notified through reasonable effort*" (federal rule 23(c)(2), italics added), and entitles *all* other class members only to "the best notice practicable under the circumstances" (*ibid.*) or, in the language of California rule 1856(e), "a means of notice reasonably calculated to apprise the class members of the pendency of the action." As *Shutts* notes, judicial adoption of the "opt-in" procedure urged by the petitioner in that case would invalidate federal rule 23(c)(2). (*Shutts, supra,* 472 U.S. at pp. 813–814.) The *Shutts* court saw no need to do that because, as explained in *Eisen v. Carlisle & Jacquelin, supra,* 417 U.S. at page 173, federal rule 23 was " 'designed to fulfill requirements of due process to which the class action procedure is of course subject' " and the rule adequately incorporates the due process standards explicated in *Mullane v. Central Hanover Bank & Trust Co., supra,* 339 U.S. 306, and like cases.

*Shutts* is consistent with a large body of case law reflecting the view that "the whole concept of a large class-action might easily be stultified by insistence upon perfection in actual notice to class-members; and . . . courts should not be deterred from Rule 23 economies in litigation by exaggerating the presumed requirements of due process, or by the specter of an occasional successful collateral attack on the basis of due-process." (*Philadelphia Electric Co. v. Anaconda American Brass Co.* (E.D.Pa. 1968) 43 F.R.D. 452, 459, citing Frankel, *Some Preliminary Observations Concerning Civil Rule 23* (1967) 43 F.R.D. 39, 46–47.)

■ *Cooper v. American Sav. & Loan Assn., supra,* 55 Cal. App. 3d 274, the other case the trial court relied upon, also provides no support for an "opt-in" requirement. To begin with, the issue before the *Cooper* court was not the content or manner of giving notice, but the propriety of a class action. (*Id.* at p. 278.) The plaintiffs' motion to certify the class was denied, and the class action dismissed, because "the plaintiffs had failed to meet their burden of establishing an 'ascertained class' for both the plaintiffs and defendants." (*Id.* at p. 279.) The very different question in this case is the manner of notice to be given a class *already certified,* in part on the basis of an explicit finding that, unlike the class in *Cooper,* it was "ascertainable." The *Cooper* court discussed the manner of giving notice in response to the plaintiffs' contention that their failure to identify individual class members could be cured by the giving of published notice. The court rejected this argument because accepting it "would place our stamp of approval on notice by publication in almost every situation, and would reward the plaintiff who seeks to avoid the work of identifying members entitled to individual notice (and the cost involved), or the dilatory plaintiff." (*Id.* at p. 286.) *Cooper* indicates that the difficulty of notifying individual members of a putative class may be reason to deny class certification,[3] but it does not say a class member holding a substantial stake has a greater constitutional right to actual notice than a class member with an insubstantial stake, let alone suggest that the "opt-in" procedure, which *Cooper* never mentions, may be required to protect the due process rights of class members holding a significant stake.

*Cooper* is distinguishable in another important way. As the court repeatedly emphasized, over a period of years the plaintiffs in that case made only meager and belated efforts to identify individual class members. That is not true here. The record indicates plaintiff promptly commenced aggressive discovery designed to identify the class, and that its failure was not one of effort but largely due to the fact that the do not fax database was no longer available,[4] and defendant's resistance to discovery of the fax database on the basis of the trade secret privilege.

---

[3] "Whether a class is ascertainable is determined by examining (1) the class definition, (2) the size of the class, and (3) *the means available for identifying class members.* [Citations.]" (*Reyes v. Board of Supervisors* (1987) 196 Cal.App.3d 1263, 1271 [242 Cal.Rptr. 339], italics added.)

[4] Class counsel told Judge Mittelsteadt that while the case was before Judge Pfeiffer, they had propounded special interrogatories to defendant "over and over," and were repeatedly "stonewalled." According to counsel, "we attempted to get the list of people [defendant's employees] said they kept and if my recollection serves me correctly, they said that computer [that stored the information] was sold and that data was destroyed. So they had it and then they destroyed it [during] the pendency of a lawsuit and we had to come in on a motion for preliminary injunction to stop them from destroying additional evidence." Plaintiff's attorneys also submitted declarations of two employees of defendant indicating that information identifying individual members of the class was destroyed after the commencement of this action and is no longer available. Judge Pfeiffer enjoined further destruction of this evidence.

■ *Cooper* appears to have been relied on by the trial court because language in the opinion indicates that personal notice is particularly important in cases in which some or all members of the class have a substantial stake. We have misgivings whether it has been shown in this case that a significant number of individual members of the certified class have such a substantial stake that they would likely want to litigate on their own. But even if they do, an "opt-in" requirement is not necessary to protect their interests. As *Shutts* explains, a class member with a substantial stake "should be fully capable of exercising his right to 'opt out' " (*Shutts, supra,* 472 U.S. at p. 813), and class members cannot be given better notice of the duty to "opt-in" than of the right to "opt-out."

It is not clear that anyone's interests are protected by imposition of the duty to "opt-in" prior to the establishment of liability.[5] Requiring plaintiffs to affirmatively "opt-in" will inevitably—and sometimes significantly—reduce the size of the class, and may therefore be seen as simply "another device by which a defendant could 'chip away at the size of the class through exclusion of unnamed plaintiffs.' " (*Carlson v. Superior Court* (1973) 33 Cal.App.3d 640, 649 [109 Cal.Rptr. 240], citing *Southern California Edison Co. v. Superior Court* (1972) 7 Cal.3d 832, 842 [103 Cal.Rptr. 709, 500 P.2d 621].) At the same time, reducing the class to those who acknowledge receipt of actual notice by "opting in" is not necessarily in the interest of defendants, because it reduces the res judicata effect of a judgment for the defendant, and opens the door to a great deal of redundant litigation, particularly where some members of the class may have a substantial stake.[6]

■ In sum, as then Presiding Justice Kaus explained in *Cartt v. Superior Court* (1975) 50 Cal.App.3d 960 [124 Cal.Rptr. 376], the federal Constitution, as defined by the United States Supreme Court, does not say "that a state may not permit a class action to go forward unless the defendant can be assured in advance that in the event of a defense victory all members of the class will be foreclosed from further proceedings." (*Id.* at p. 968.) Justice Kaus noted that "[e]ven the draftsmen of Rule 23, in spite of their 'preoccupation with res judicata' [citation] recognized that 'the court conducting the

---

[5] After the defendant's liability is established a court may be justified in ordering subsequent notice requiring class members to file statements of their claims by a specified time and barring those not then submitted. (7B Wright et al., Federal Practice and Procedure, *supra,* § 1787, p. 217, and cases there cited.)

[6] This case dramatically illustrates the likelihood of such a problem. Although on December 30, 2004, we stayed the trial court order of October 13, 2004, the notice required by that order, including the "opt-in requirement," was given. The notice informed class members that they "must opt-in to the class action no later than January 7, 2005." It is undisputed that 142,049 persons called defendant's toll-free number asking to be removed from the list that defendant used to send unsolicited facsimile messages, and the prospective class includes more than just them; counsel informed us at oral argument that only 55 prospective members of the class had then affirmatively acted to "opt-in."

[class] action cannot predetermine the *res judicata* effect of the judgment; this can be tested only in a subsequent action.' [Citation.] [¶] Judge [Marvin E.] Frankel, in a widely quoted article on Rule 23 (43 F.R.D. 39), observed that whatever may have been the intent of the framers of Rule 23 'omniscience' with respect to the res judicata effect of the class action notice is neither 'expected or necessary,' because absent 'parties have a clear right in some later litigation to attack the judgment which purports to bind them.' [Citation.]" (*Cartt v. Superior Court*, at p. 968, fn. 12.)

■ The trial court's attempt to strictly define the res judicata effect of the future judgment was misguided also because the rights of class members to the benefit of the judgment are "not before the class action court, nor can they be vicariously asserted by the class action defendant, who in the class action can assert no rights but its own." (*Cartt v. Superior Court, supra,* 50 Cal.App.3d at p. 969, fn. omitted.) In this case, defendant never asserted any such rights; it acceded to the "opt-in" requirement only after the trial judge made clear her determination to impose it. As in *Cartt*, the best the trial court could have done in this case was "to give itself reasonable assurance that under all of the circumstances that may prevail in the future—the improbability that anyone else who is only minimally damaged will undertake and underwrite new litigation, the statute of limitations, the doctrine of res judicata and, above all, the impact of *stare decisis*—renewed harassment is nothing but a remote theoretical possibility." (*Ibid.*, fn. omitted) Also as in *Cartt*, the trial court "focused solely on what, as a practical matter, may be the least important of the factors which will discourage future litigation: the res judicata effect of the pending action on particular class members surfacing after this case is history." (*Id.* at p. 970, fn. omitted.)

The trial court erred in concluding that, in the circumstances of this case, due process required limitation of the res judicata effect of the judgment to members of the class who acknowledged personal notification by "opting in."

## III.

### *An "Opt-in" Procedure Is Not Authorized By and Conflicts with California Class Action Rules*

■ Code of Civil Procedure section 382, which provides statutory authority for class actions in California, does not prescribe a procedural framework for such suits. Certain consumer class actions are subject to the procedures set forth in Civil Code section 1781, which is part of the Consumer Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.); all other class actions, like this one, must comply with the California Rules of Court relating to the management of class actions. (Cal. Rules of Court, rules 1850–1861.) The

chief issue presented by the petition, which has never previously been presented to a California court, is whether these rules of court, which were promulgated in 2002, authorize or permit a court to require individual members of the class to affirmatively request inclusion in the class; that is, to "opt-in."[7]

■ Rules 1850 through 1861 of the California Rules of Court are analogous in many respects to federal rule 23 and the procedural prescriptions of the CRLA set forth in Civil Code section 1781, which adopted the federal approach. In the absence of controlling state authority, our courts look for guidance to both the federal rule (*Southern California Edison Co. v. Superior Court, supra,* 7 Cal.3d 832, 839; *La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 871–873 [97 Cal.Rptr. 849, 489 P.2d 1113]; *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 821 [94 Cal.Rptr. 796, 484 P.2d 964]; *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 709 [63 Cal.Rptr. 724, 433 P.2d 732]; *7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135, 1160, fn. 3 [102 Cal.Rptr.2d 777]; *Bell v. American Title Ins. Co.* (1991) 226 Cal.App.3d 1589, 1603 [277 Cal.Rptr. 583]) and the state statute (*Reyes v. Board of Supervisors, supra,* 196 Cal.App.3d 1263, 1271).

■ The only California case addressing the question whether our rules of procedure permit the judicial imposition of an "opt-in" requirement is *Previte v. Lincolnwood, Inc.* (1975) 48 Cal.App.3d 976 [122 Cal.Rptr. 194] (*Previte*),[8] decided by this court, but that case was decided at a time at which our rules of court did not speak specifically to the management of class actions. The trial court in *Previte* "ordered that notices be sent to all members of the class of plaintiffs by the attorney for plaintiffs, and ruled that only those who responded that they wished to be included in the class of plaintiffs would be. Those who failed to respond would be excluded from the class."

---

[7] In his separate opinion, Justice Haerle says we are rendering an opinion "on not one but two issues (is 'opt-in' permitted as a form of class notification under rule 1856(e) of the California Rules of Court and is 'opt-in' permissible for purposes of class certification)" (conc. & dis. opn. of Haerle, J., *post* at p. 1556) neither of which he thinks is necessary to address (see discussion, *post,* at p. 1550, fn. 12.) The questions Justice Haerle poses separately cannot have different answers, because they are merely different ways of asking the *same* question, which is whether, *at any stage* prior to the determination of liability, an individual may be required to take affirmative action to join a class.

[8] In *Carlson v. Superior Court, supra,* 33 Cal.App.3d 640, the trial court order "did not allow unnamed plaintiffs to freely 'opt out' of the class but, rather, required them to either submit to deposition proceedings or exclude themselves from the class. In effect, unnamed plaintiffs served with deposition subpoenas are required, under the terms of the trial court's order, to take affirmative action in order to remain as members of the class." (*Id.* at pp. 649–650.) The Court of Appeal likened the order to requiring "class members to somehow 'opt in' before liability is established" (*id.* at p. 650), which it found inconsistent with federal rule 23, an abuse of discretion, and vacated.

(*Previte*, at p. 983.) Relying on federal interpretation of federal rule 23, and looking to Civil Code section 1781, which we described as "a direct adaptation of the federal rule" and "indicative of the California legislative trend," we determined that the order was error and reversed and remanded. (*Previte*, at pp. 983–984, quoting the statement in *Berman v. Narragansett Racing Association* (D.R.I. 1969) 48 F.R.D. 333, 338, that " '. . . the Court does not agree that some minimum affirmative response is required of those who will be bound by this judgment. Such a requirement is tedious, is not necessitated by the rule ⋏. .' ".) *Previte* clearly implies that compelling class members to affirmatively "opt-in" is inconsistent with federal rule 23(c)(2), which requires only "the best notice practicable under the circumstances," and that individual notice need be given only to members of the class "who can be identified through reasonable effort."

■ California rule 1856, which relates to class notice, was modeled on federal rule 23 and Civil Code section 1781. (See Jud. Council of Cal., Civil and Small Claims Advisory Com., Rep. on Statewide Rules for Class Actions, Sept. 12, 2001.) In language similar to that appearing in federal rule 23(c)(2), and section 1781, subdivision (d), California rule 1856 requires only the best notice practicable under the circumstances: "if it appears that all members of the class cannot be notified personally, the court may order a means of notice reasonably calculated to apprise the class members of the pendency of the action—for example, publication in a newspaper or magazine; broadcasting on television, radio, or the Internet; or posting or distribution through a trade or professional association, union, or public interest group." (Cal. rule 1856(e).) In class actions such as this, in which common questions of law and fact predominate, the class must be notified that the court will exclude from the class any member who requests exclusion. Also like federal rule 23, California rule 1856 is silent as to whether a trial court may require notice of the need for a member who wishes to be included in the class to affirmatively "opt-in."

■ It is clearer today than it was 30 years ago, when we decided *Previte, supra*, 48 Cal.App.3d 976, that the use of an "opt-in" procedure "contravenes the express language of Rule 23 as well as judicial authority." (7 Newberg on Class Actions (4th ed. 2002) § 22:90, pp. 385–386.) Thirty years ago there was uncertainty among the federal trial courts whether an individual could be required to act affirmatively in some manner in order to participate in a class action, as by the filing of a claim form or some other "inclusionary request." (See, e.g., *Unicorn Field, Inc v. Cannon Group, Inc.* (S.D.N.Y. 1973) 60 F.R.D. 217, 227–228.) Initially, a few courts took the position that the requirement of a claim form at the class notification stage did not offend federal rule 23 (*State of Iowa v. Union Asphalt & Roadoils, Inc.* (S.D. Iowa 1968) 281 F.Supp. 391, 403–404; *Minnesota v. United States Steel Corp.* (D.Minn. 1968) 44 F.R.D. 559, 577–578; *Harris v. Jones* (D.Utah

1966) 41 F.R.D. 70, 73–75), but this view was quickly rejected by other federal district courts (see, e.g., *Abulan v. R.W. Pressprich & Co.* (S.D.N.Y. 1971) 51 F.R.D. 496; *Ostroff v. Hemisphere Hotels Corp.* (S.D.N.Y. 1973) 60 F.R.D. 459, 462; *B and B Investment Club v. Kleinert's* (E.D.Pa. 1974) 62 F.R.D. 140, 148–149; *Unicorn Field, Inc. v. Cannon Group, Inc., supra*, 60 F.R.D. 217, 227–228; *Enterprise Wallpaper Mfg. Co. v. Bodman* (S.D.N.Y. 1980) 85 F.R.D. 325; *In re Crazy Eddie Securities Litigation* (E.D.N.Y. 1991) 135 F.R.D. 39, 42 ["An important principle underlying Rule 23 is that class members should not be required to request inclusion into a class action"].) The latter view was adopted by federal appellate courts. It is now settled that under federal rule 23, prior to the determination of liability, members of a plaintiff class may not be advised that unless they affirmatively request inclusion in class or perform some other act they will be excluded. (*Kern v. Siemens Corp.* (2d Cir. 2004) 393 F.3d 120 (petn. for cert. filed Mar. 21, 2005); *Robinson v. Union Carbide* (5th Cir. 1977) 544 F.2d 1258; *Clark v. Universal Builders, Inc.* (7th Cir. 1974) 501 F.2d 324.)

The rationale of the federal cases was most recently explained by the Second Circuit in *Kern v. Siemens Corp., supra*, 393 F.3d 120. There, "[d]espite substantial authority indicating that Rule 23 precludes certification of 'opt in' classes, the District Court relied on a handful of cases to announce a new rule of civil procedure, namely that 'opt in' classes are not only permissible, but may in fact 'be necessary in certain circumstances.' [Citations.] The District Court reasoned that an 'opt in' class is 'necessary' in this case because plaintiffs sought to certify a class whose prospective members are defined by their willingness 'to take [the] affirmative action' of 'consent[ing] to be bound by the judgment.' [Citation.] The District Court elaborated that '[a]n "opt in" class is necessary here because it would be unfair to presumptively include members in a class for which membership depends on a waiver of a right . . . .' [Citation.]" (*Id.* at p. 126.)

The Second Circuit found that certification of an "opt-in" class was error. After explaining why the two cases the trial court had relied upon were inapplicable,[9] the court concluded that "[i]n short, we cannot envisage any

---

[9] The *Kern* court allowed that *Robinson v. Union Carbide Corp.* (5th Cir. 1977) 544 F.2d 1258, does say that "there are some class actions where it is necessary for class members who do not opt out to take some affirmative action as a condition of ultimate recovery" (*Robinson*, at p. 1260), but emphasized that (in language ignored by the District Court in *Kern*) the Fifth Circuit made it clear that the duty of individual plaintiffs to come forward to establish their entitlement to portions of the recovery "should not be imposed upon them *until necessary* for adjudication . . . . Opting in was not necessary *before the determination of liability*." (*Robinson*, at p. 1261, some italics added; see *Kern v. Siemens Corp., supra*, 393 F.3d at p. 126.)

circumstances when Rule 23 would authorize an 'opt in' class in the liability stage of a litigation." (*Kern v. Siemens Corp., supra,* 393 F.3d at p. 128.)[10]

In reaching this conclusion, the *Kern* court specifically rejected the view, also urged by defendant here, that the propriety of an "opt-in" requirement is shown by the fact that it is specifically authorized by certain statutes, specifically the Fair Labor Standards Act (FLSA). (*Kern v. Siemens Corp., supra,* 393 F.3d at p. 128.) Rejecting the trial court's analogy to the FLSA as support for its "novel reconstruction of Rule 23," the Second Circuit acknowledged that, "unlike Rule 23, the FLSA provides that '[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.' [Citations.] The District Court, however, was asked to certify a class under Rule 23, not under the FLSA. [Citation.] If anything, the language of the FLSA suggests that, should Congress seek to authorize certification of 'opt in' classes, it can do so with unambiguous language. All parties concede that Rule 23 contains no such language." (*Kern v. Siemens Corp.,* at p. 128.)

The *Kern* court also rejected the district court's stated view that it was "immaterial" that federal rule 23 did not specifically authorize "opt-in classes," because neither did it specifically prohibit them, and a district court was therefore free to impose an "opt-in" requirement on the basis of its inherent equitable powers. "Contrary to the District Court's assertion," the Second Circuit declared, "Rule 23 offers the *exclusive* route to forming a class action. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 [138 L.Ed.2d 689, 117 S.Ct. 2231] (1997) ('[O]f overriding importance, courts must be mindful that [Rule 23] as now composed sets the requirements they are bound to enforce. Federal Rules take effect after an extensive deliberative process

---

[10] Our concurring and dissenting colleague states that the "opt-in" technique is not as "disreputable" as we suggest because it was used—"rarely," he concedes—in federal cases in which the procedure was not mandated by statute. (Conc. & dis. opn. of Haerle, J., *post,* at p. 1559.) Though he cites no cases, he is correct. The cases to which Justice Haerle refers, however, are old ones in which class members were required to file a proof of claim form before a liability determination (see, e.g., *State of Iowa v. Union Asphalt & Roadoils, Inc., supra,* 281 F.Supp. 391, 403–404; *Minnesota v. United States Steel Corp., supra,* 44 F.R.D. 559, 577–578; *Harris v. Jones, supra,* 41 F.R.D. 70), which have been rejected by federal appellate courts (see, e.g., *Kern v. Siemens Corp., supra,* 393 F.3d at pp. 125–126; *Robinson v. Union Carbide, supra,* 544 F.2d at pp. 1260–1261), and criticized by commentators. (See, e.g., 2-14A Moore's Manual—Federal Practice and Procedure (2004) § 14A.23(5)(b) ["[A] court may generally not require class members to file a proof of claim form before a liability determination, because court's have generally found the use of such a form to be an improper opt-in requirement in violation of Rule 23(c)(2), at least as a prerequisite to trial"]; see also, 7B Wright et al., Federal Practice and Procedure, *supra,* § 1787, p. 216.) Justice Haerle also thinks it significant that the "opt-in" procedure was "mentioned" in *Early v. Superior Court* (2000) 79 Cal.App.4th 1420, 1436 [95 Cal.Rptr.2d 57], (conc. & dis. opn. of Haerle, J., *post* at p. 1559) but the statement to which he refers, which does not even rise to the level of dicta, is hardly approving.

involving many reviewers . . . . The text of a rule thus proposed and reviewed limits judicial inventiveness'); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 135 (2d Cir. 2001) (stating that 'a trial court must conduct a "rigorous analysis" to ensure that the prerequisites of Rule 23 have been satisfied before certifying a class'). Any putative 'opt in' class, assuming such classes are permitted at all, must still satisfy the requirements of Rule 23. Plaintiffs have not demonstrated that the facts of this case permit the certification of an 'opt in' class that comports with Rule 23." (*Kern v. Siemens Corp., supra*, 393 F.3d at pp. 128–129.)

According to the *Kern* court, the policy basis of the prevailing view that "by adding the 'opt out' requirement to Rule 23 in the 1966 amendments, Congress *prohibited* 'opt in' provisions by implication" (*Kern v. Siemens Corp., supra*, 393 F.3d at p. 124) was set forth in an oft-cited article by the Reporter of the Advisory Committee on Civil Rules at the time of the 1966 amendments, then Harvard Law School Professor Benjamin Kaplan: " '[R]equiring the individuals affirmatively to request inclusion in the lawsuit would result in freezing out the claims of people—especially small claims held by small people—who for one reason or another, ignorance, timidity, unfamiliarity with business or legal matters, will simply not take the affirmative step. The moral justification for treating such people as null quantities is questionable. For them the class action serves something like the function of an administrative proceeding where scattered individual interests are represented by the Government. In the circumstances delineated by subdivision (b)(3) [of Rule 23], it seems fair for the silent to be considered as part of the class. Otherwise the (b)(3) type would become a class action which was not that at all-a prime point of discontent with [the pre-1966 version of Rule 23].' " (*Kern v. Siemens Corp.*, at p. 124, quoting Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), supra*, 81 Harv. L.Rev. 356, 397–398.)[11]

▮ "Opt-in" requirements seem to us as offensive to the reasonable notice provision of California rule 1856(e) as to that of federal rule 23(c)(2).

▮ California rule 1856(e) provides that the "court may order a means of notice reasonably calculated to apprise the class members of the pendency of the action . . ." (i.e., something less than "actual notice") if "personal notification is unreasonably expensive *or* the stake of individual class members is insubstantial, *or* if it appears that all members of the class cannot be notified personally." (Italics added.) The trial court interpreted this language as meaning that whenever the stake of individual class members is *not* insubstantial, "a means of notice reasonably calculated to apprise the class

---

[11] This language was also relied upon by the United States Supreme Court in *Shutts, supra*, 472 U.S. at page 813, footnote 4.

members of the pendency of the action" cannot suffice. This interpretation is unreasonable, because it would mean that in cases in which the stake of individual classes is not insubstantial all members of the class would have to be notified personally *even if it also "appears that all members of the class cannot be notified personally"* (Cal. rule 1856(e), italics added), which cannot be. As made clear by the first sentence of California rule 1856(e), "[t]he stake of the individual class members" is simply one of seven factors that the court "must consider" when determining the manner of giving notice; it is not the transcendent consideration.

The fact that California rule 1856(e) does not by its terms prohibit the use of an "opt-in" requirement does not mean it permits such a procedure.

 Under California rule 1856, as under federal rule 23, notice is not required until after the propriety of the class action has been determined. Pursuant to California rule 1856(c), the manner of giving notice is only to be determined "[u]pon certification of a class, or as soon thereafter as practicable." (See also 2 Newberg on Class Actions (3d ed. 1992) § 4.35, p. 4-155 ["Notice provisions come into play only after a Rule 23(b)(3) class is certified"]; Fed. Jud. Center, Manual for Complex Litigation, *supra,* § 30.21, p. 224.) As the existence of an ascertainable class is a precondition of class certification (*Daar v. Yellow Cab Co., supra,* 67 Cal.2d 695, 704, 717; *Vasquez v. Superior Court, supra,* 4 Cal.3d 800, 809), a court determining the manner in which notice shall be given the class must assume an ascertainable class. The trial court refused to indulge this necessary assumption. In the service of its erroneous due process theory, and in the guise of an order purporting to merely approve a form of class notification, the trial court created a perverse anomaly: a "class action" that does not run fully for or against the certified class. In other words, the "opt-in" requirement created " 'a class action which [is] not that at all' " (*Kern v. Siemens Corp., supra,* 393 F.3d at p. 124), but is instead an ersatz form of "permissive joinder." (See Code Civ. Proc., § 378.) The class action, which is proper only when joinder of all members of the class is "impracticable" (Code Civ. Proc., § 382; Civ. Code, § 1781; fed. rule 23(a)), was designed to eliminate the need to join absent parties. Because the members of a certified class are by definition ascertainable, those members who cannot be personally notified are entitled only to notice "reasonably calculated" to apprise them of the action. California rule 1856(e) cannot reasonably be construed as permitting the use of an "opt-in" requirement as a means of providing the actual notice the rule was designed to make unnecessary.

■ "The principal purpose of notice to the class is the protection of the integrity of the class action process, one of the functions of which is to prevent burdening the courts with multiple claims where one will do." (*Cartt v. Superior Court, supra,* 50 Cal.App.3d at p. 970.) An "opt-in" procedure does not protect the integrity of the class action process either by increasing the likelihood members of the class will actually receive notice or in any other way. On the contrary, as we have seen, because it invariably decreases the number of class members bound by the judgment and thereby increases the likelihood of redundant litigation, the "opt-in" approach undermines the integrity of that process. *Daar* and *Vasquez* and their progeny persuade us that, like federal rule 23, California rule 1856 "must be liberally construed with a view to enhancing the use of class actions as a means of vindicating rights of absent members who are unable, for one reason or another, personally to prosecute." (*Berland v. Mack* (1969) 48 F.R.D. 121, 125.) The overwhelming weight of authority teaches that the "opt-in" approach does not enhance but undermines the salutary effect of proper class actions. The ascertainability of the class must be determined in connection with certification of the class, not as an aspect of determining the content of notice or the manner in which notice should be given.

■ For the foregoing reasons, we hold that the trial court's imposition of the "opt-in" requirement conflicts with the California Rules of Court governing the management of class actions.[12]

## IV.

### *Further Judicial Inquiry Is Required as to the Best Notice Practicable Under the Circumstances*

■ As we shall vacate the order approving class notice, the court will on remand have the opportunity to revisit the issue. This is, we fully appreciate, a difficult responsibility, as "[u]nfortunately, no single set of rules

---

[12] Justice Haerle concurs in this holding and correctly notes that the propriety of an "opt-in" requirement under the present rule has not previously been decided by a California court. Nevertheless, in his separate opinion, Justice Haerle takes us to task for deciding the issue, which he finds unnecessary. Citing Professor Cass Sunstein's commendable thesis "that a minimalist path usually—not always, but usually—makes a good deal of sense *when the [Supreme] Court is dealing with a constitutional issue of high complexity about which many people feel deeply and on which the nation is divided (on moral or other grounds)"* (Sunstein, One Case at a Time: Judicial Minimalism on the Supreme Court (1999) p. 5), our colleague charges us with unregenerate " 'judicial maximalism.' " (Conc. & dis. opn. on Haerle, J., *post,* at p. 1558.) The accusation is wholly unjustified. The issue we decide, which clearly is not the type Professor Sunstein has in mind, is the chief issue presented by the petition. No party has claimed we should try to avoid it, either because the record is deficient or for any other reason. To refuse to decide the question would in our view unjustifiably complicate this case, further delay its resolution, and be judicially irresponsible.

or factors has yet emerged, and courts continue to revisit and refine the illusive issue of reasonable notice." (2 Newberg on Class Actions, *supra*, § 8.03, pp. 8-5 to 8-6.)

The alternative forms of notice California rule 1856 mentions—"publication in a newspaper or magazine; broadcasting on television, radio or the Internet; or posting or distribution through a trade or professional association, union, or public interest group"—are offered simply as examples; the list is not exclusive. The rule therefore leaves substantial room for the "creativity" often needed in the design of an effective means of notifying class members. (Fed. Jud. Center, Manual for Complex Litigation, *supra*, § 30.211, p. 226, citing as an example *Arizona Dairy Prods. Litig.*, 75-2 Trade Case, ¶ 60,555, 1975 WL 966 (D.Ariz.), in which notice was printed on milk cartons; see also *Berland v. Mack, supra*, 48 F.R.D. 121, 129 ["Rule 23 contemplates cooperative ingenuity on the part of counsel and the court in determining the most suitable notice in each case"].)

Though it is the responsibility of the trial court, not this court, to initially determine the manner in which class notice should be given, we think it appropriate to identify some considerations that appear relevant.

Ordinarily it is the plaintiff's responsibility to provide notice and bear the expense of doing so (see *Eisen v. Carlisle & Jacquelin, supra*, 417 U.S. 156, 178), but there are circumstances in which courts have required the defendant to assist in identifying class members and/or to bear or share the expense of providing them notice. (*Oppenheimer Fund v. Sanders* (1978) 437 U.S. 340, 355 [57 L.Ed.2d 253, 98 S.Ct. 2380];[13] *State of California ex rel. Dept. of Motor Vehicles v. Superior Court* (1998) 66 Cal.App.4th 421 [78 Cal.Rptr.2d 88]; see also *In re Nissan Motor Corp. Antitrust Litigation* (5th Cir. 1977) 552 F.2d 1088, 1101–1102 [collecting cases in which defendants were ordered to help identify members of the plaintiff class]; *Macarz v. Transworld Sys., Inc.* (D.Conn. 2001) 201 F.R.D. 54; *Six Mexican Workers v. Arizona Citrus Growers* (D.Ariz. 1986) 641 F.Supp. 259 [imposing on defendants the cost of class notice].)

In *State of California ex rel. Dept. of Motor Vehicles v. Superior Court, supra*, 66 Cal.App.4th 421, the defendant was required to share in the cost of

---

[13] *Oppenheimer Fund v. Sanders* ruled that the trial court could not compel the defendants to bear the cost of identifying class members, but held that under federal rule 23(d) it could direct the defendants, who controlled the computer tapes on which class members names were stored, to compile the class list. Federal rule 23(d) controlled because "the information is sought to facilitate the sending of notice rather than to define or clarify issues in the case." (*Oppenheimer Fund v. Sanders, supra*, 437 U.S. at p. 350.)

identifying and notifying the class because the difficulty of identifying class members was the result of its conduct. The case involved an action for taxpayer refunds of excessive vehicle license fees collected by the Department of Motor Vehicles (DMV). The California Supreme Court had held that the class, to be determined on remand, could properly include only persons who timely filed valid claims for refund. (*Woosley v. State of California* (1992) 3 Cal.4th 758, 795 [13 Cal.Rptr.2d 30, 838 P.2d 758].) After remand, the trial court entered an order certifying a class consisting of all persons entitled to refund of excessive vehicle license fees on vehicles originally sold outside California. The Court of Appeal held that the class must be limited to persons whose timely claims were rejected within the three years preceding the filing of each of the three individual cases that had been consolidated. Such persons could not easily be identified and notified, however, because the DMV failed to retain claims made prior to the 1992 decision in *Woosley*. (*State of California ex rel. Dept. of Motor Vehicles v. Superior Court, supra,* 66 Cal.App.4th at pp. 437–438.) In part for that reason, the Court of Appeal declared that fairness might require the DMV to bear a part of the cost of class notification. "Ordinarily, it would be the plaintiff's burden to identify class members and establish their numerosity. However, because of the particular circumstances presented here, we find it would be equitable in this case to require the DMV to share the costs of notification with plaintiff for the purposes of identifying potential class members. Plaintiff has the responsibility of determining the eligibility of each for inclusion in the litigation class. The trial court shall have the discretion to modify the costs burdens in the event the parties' conduct justifies." (*Id.* at p. 438.)

 The approach adopted in *State of California ex rel. Dept. of Motor Vehicles v. Superior Court,* is hardly novel. For example, in *Appleton Electric Co. v. Advance-United Expressways* (7th Cir. 1974) 494 F.2d 126, responsibility to notify the class was imposed on the defendants because they failed to retain information that would have made it easy to identify the class. The defendant carriers in that case had been ordered by the Interstate Commerce Commission (ICC) to refund shipping charges not found to have been just and reasonable. After the case was certified as a class action and plaintiffs granted summary judgment on the issue of liability, the court ordered that notice be sent to members of the class by first-class mail. The court determined that each defendant possessed or controlled records identifying those shippers who paid the rates disapproved by the ICC, and directed the defendants to file with the court "the names and most complete last-known addresses" of such shippers. Rejecting the defendants' objection that this was not feasible, the Seventh Circuit pointed out that "[t]he difficulties defendants complain of are of their own making. They knew at the beginning of the rate-increase period that they might have to refund the increase. Yet they apparently set aside no funds, took no steps to keep adequate records for easy

identification of their refund customers, and did no earmarking of the necessary documents. Some have even destroyed their records. Defendants who had early notice of their possible liability cannot avoid a class suit merely because their own actions have made the class more difficult to identify." (*Id.* at p. 135.) The court observed that "if the costs are higher than they might have been if defendants had kept better records, that is even more clearly defendants' burden to bear." (*Id.* at pp. 136–137.) "Class actions cannot be defeated by destroying records." (*Id.* at p. 139.)

In *Mountain States v. District Court* (Colo. 1989) 778 P.2d 667, the defendant was obliged to help notify the class not because it contributed to the problem but because it possessed a means of providing notice easily and at little expense. The Colorado Supreme Court affirmed an order directing the defendant public utility to provide class representatives access to its monthly billing envelopes as a means of providing notice of the pendency of the class action to 1.5 million members of the certified class. According to the court, the means of notice ordered "does no more than provide Mountain Bell customers with factually accurate information with respect to their right to join in or be excluded from pending litigation over inside wire maintenance service—a matter directly bearing on the commercial relationship between Mountain Bell and its customers—and is reasonably related to the substantial governmental interest of providing a fair and cost-effective method for resolving a multitude of claims involving common issues of fact or law in one lawsuit, thereby preventing the unnecessary waste of judicial resources in repetitious litigation. [¶] . . . There is nothing about the nature or content of the notice in this case . . . that is violative of Mountain Bell's right to free speech. The notice involved here is a message from the court, calculated to inform Mountain Bell customers of the nature of the pending litigation in which the customers might have some interest. Mountain Bell may protest and contest the filing of the lawsuit, but it has no basis to disagree with the fact that a class action complaint has been filed against it by some of its customers." (*Id.* at pp. 674–675.)[14]

The record suggests that defendant's conduct may have unnecessarily complicated the problems of identifying and notifying the class (as in *State of California ex rel. Dept. of Motor Vehicles v. Superior Court, supra,* 66 Cal.App.4th 421 and *Appleton Electric Co. v. Advance-United Expressways, supra,* 494 F.2d 126), and that in any case, defendant may possess the ability to provide class notice easily and at relatively little cost (as

---

[14] In reaching this conclusion, the Colorado Supreme Court distinguished *Pacific Gas and Electric Co. v. Public Utilities Commission* (1986) 475 U.S. 1 [89 L.Ed.2d 1, 106 S.Ct. 903], in which the Supreme Court vacated an order of the California Public Utilities Commission requiring a private utility to include in its billing envelopes the messages of a consumer interest group with which the utility disagreed. (*Mountain States v. District Court, supra,* 778 P.2d at pp. 675–676.)

in *Mountain States v. District Court, supra,* 778 P.2d 667).[15] Either factor would justify shifting the responsibility to notify the class to defendant.

After this action was filed, and apparently in the ordinary course of business, defendant destroyed information identifying the individuals and entities that had asked defendant to stop sending them unsolicited advertisements by telephone facsimile (the do not fax database), and also information identifying the number of unsolicited advertisements defendant sent. When this was revealed, the trial court enjoined defendant from destroying other information relevant to identification of the class.

As a result of its destruction of the do not fax database and other records, defendant may no longer know the names and phone numbers of those who asked to be removed from its fax database and the number of facsimiles it sent. However, defendant still possesses the fax database, which presumably identifies all or many of those to whom defendant sent unsolicited advertisement by telephone facsimiles, in violation of the TCPA. Before she certified the class in 2003, Judge Pfeiffer ruled that the fax database was a trade secret. Pursuant to Evidence Code section 1060, "the owner of a trade

---

[15] Unfortunately, Judge Mittelsteadt appears not to have been fully informed on these questions. Her unfamiliarity with the history of the case seems less her fault, however, than the result of the manner in which this case has been managed by counsel and the superior court. As earlier indicated, the class was certified more than a year and a half before Judge Mittelsteadt became involved, and by then at least five different San Mateo County Superior Court judges had made rulings in the case. Many of those rulings related to plaintiff's unsuccessful efforts to obtain from defendant databases identifying those to whom unsolicited advertisements were sent by facsimile, and defendant's destruction of the do not fax database after this action was filed. Judge Mittelsteadt, who was not involved in the discovery and related proceedings, including those that culminated in certification of the class, was aware these issues had been litigated before she entered the case, lamenting that, "because I didn't conduct any of the hearings that consume 9, I think 9 court volumes, . . . I am at a disadvantage and I am being real honest with you."

Distributing judicial responsibility to manage a large class action among many judges is extremely inefficient and increases the likelihood of noncompliance with the rules of court applicable to the management of class actions, particularly California rule 1856. Rule 1856(c) states that an order defining the content of class notice and the manner in which notice shall be provided is required to be made "[u]pon certification of a class, *or as soon thereafter as practicable . . . .*" (Italics added.) As an experienced trial judge has pointed out, "it seems obvious that if notice is to be effective—if class members are to have a meaningful opportunity to request exclusion, appear in the action, object to the representation, etc.—the invitation must go out as promptly as the circumstances will permit." (Frankel, *Some Preliminary Observations Concerning Civil Rule 23, supra,* 43 F.R.D. 39, 40–41.) The issue before us would not likely have arisen, or would have arisen far earlier, if a single judge, rather than six, had supervised discovery, ruled upon requests for injunctive relief and subpoenas duces tecum, certified the class, and defined the manner of class notice.

The failure of counsel for the parties to request an order assigning the case to a single judge for all purposes is inexplicable. Under the California Rules of Court and its own local rules, the San Mateo County Superior Court possessed authority to issue such an order even without the motion of a party (Cal. Rules of Court, rule 213; San Mateo County Super. Ct., Local Rules, rule 2.3(e)(7)(C), (E) & (J)), and it should have done so.

secret has a privilege to refuse to disclose the secret, and to prevent another from disclosing it, if the allowance of the privilege will not tend to conceal fraud *or otherwise work injustice.*" (Italics added.) If it can be established that defendant's fax database identifies all or many individual members of the class plaintiff is otherwise reasonably unable to identify, the trial court may wish to consider whether, in light of defendant's conduct, it would "work injustice" to allow defendant to maintain the secrecy of that database. (See *Upjohn Co. v. Hygieia Biological Laboratories* (E.D.Cal. 1993) 151 F.R.D. 355; *Bridgestone/Firestone, Inc. v. Superior Court* (1992) 7 Cal.App.4th 1384, 1391 [9 Cal.Rptr.2d 709].)

If the court feels it necessary to maintain the secrecy of the fax database, and there are no means by which it can be disclosed to plaintiff without violating its secrecy,[16] the court should consider whether to order defendant to provide notice by telephone facsimile to the persons whose numbers are in the fax database if that can be done without disclosure of the database to plaintiff, and would be relatively easy and less expensive than alternative forms of notice.[17] If so, defendant can be ordered to provide notice in this manner even if the court does not believe defendant contributed to the difficulty in identifying the class and should not bear any portion of the cost of notice.

If the court concludes it would be unfair or infeasible to order defendant to notify the class, and personal notification cannot otherwise be provided, the court will then need to devise some other means of notice reasonably calculated to apprise the class members of the pendency of the action, such as that proposed by plaintiff.[18]

---

[16] Such order might include, for example, employing the means used to preserve the secrecy of an alleged trade secret in an action under the Uniform Trade Secrets Act (Civ. Code, §§ 3426–3426.11), "which may include granting protective orders in connection with discovery proceedings, holding in-camera hearings, sealing the records of the action, and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval." (Civ. Code, § 3426.5.) It has been noted that "[t]he 'most common' form of protective measure is to limit access to the information that falls within the trade secret privilege. The scope of the protective order depends on the status of the parties; if [as in the present case] the party seeking disclosure is not a competitor, the order may simply bar any disclosure of the information to outsiders who are competitors." (26 Wright & Graham, Federal Practice & Procedure (1992) § 5652, p. 402, fns. omitted.)

[17] The TCPA creates no impediment to the transmission of court ordered notice via telephone facsimile machine, as it only prohibits the sending of an "unsolicited advertisement" in that manner. (47 U.S.C. § 227(b)(1)(C).)

[18] In his concurring and dissenting opinion, Justice Haerle states that the issue of notice has been rendered "partially moot" because the notice required by the trial court's order of October 13, 2004 has already been provided. (Conc. & dis. opn. of Haerle, J., *post*, at p. 1556, fn. 1.) The issue is not even partially moot. As earlier noted, the notice that has been given states that class members who desire to participate in the action must affirmatively "opt-in." As we

## DISPOSITION

 The portions of the challenged order approving notice to the class providing that, in order to participate in this action, individual members of the certified class "must opt-in to same and not opt-out," and that the judgment "will only bind those class members that opt-in," were not, as the trial court believed, required by the due process clause of the Fourteenth Amendment; neither were they permitted by the applicable rules of court. The inclusion in the order of those provisions was therefore an abuse of discretion.

Let a peremptory writ of mandate issue directing the superior court to vacate its order of October 13, 2004, approving notice to the certified class, and to enter a new and different order requiring notice to the class that conforms with the requirements of rule 1856 of the California Rules of Court. The stay previously imposed by this court is lifted. Petitioner shall recover its costs. (Cal. Rules of Court, rule 56(l).)

Lambden, J., concurred.

**HAERLE, J.,** Concurring and dissenting.—I concur with the result reached in the majority opinion, but not at all in the route by which it is reached. That route, I suggest, utilizes a quite inappropriate vehicle—a case ineffectively handled below—to render an opinion on not one but two issues (is "opt-in" permitted as a form of class notification under rule 1856(e) of the California Rules of Court and is "opt-in" permissible for purposes of class certification?), neither of which has to be addressed in order to resolve the dispute before us.

In contrast to the majority, I would grant the writ and return this matter to the trial court with express directions to assign this case to a single judge for all purposes, after which that judge should (1) direct counsel for the respective parties to propose their recommended methods for further[1] notifying potential class members of the pendency of this action, then (2) carefully review who did what to whom concerning discovery regarding the identities of the recipients of the improper faxes in question, and then (c) in light of the parties' respective class-notification proposals and the court's findings on the

---

invalidate that requirement, new notice will be required, because class members who did not "opt-in" would otherwise continue to erroneously believe they are not participating in this action and have no rights with respect thereto.

[1] The published and Web site notices required by the trial court's order of October 13, 2004, were, we were told at oral argument, provided in December 2004 and January 2005. Apparently, over 50 individuals or entities have elected to "opt-in." This alone suggests that the issue raised by the petition may be at least partially moot.

discovery issue, reconsider its ruling regarding the methodology of class notification.

Let me start by noting, first, some facts and then a few legal premises that I believe are critical to an uncomplicated resolution of this dispute. Some of these are noted in the majority opinion, but many are not.

First of all, some relevant facts regarding how this case was handled, or mishandled, below:

1. The majority downplays the significant fact, conceded by petitioner's counsel at oral argument, that he never moved the court for assignment of the case to a single judge. In its footnote 15, the majority criticizes mainly the San Mateo County Superior Court for not seeing to it that this case was handled by a single judge, consistent with its local rules. Some, but certainly not most, of that criticism may be appropriate because, as the majority notes, that court could have ordered such an assignment itself. But it was clearly plaintiff's counsel's burden to bring this issue to the attention of one of the many trial judges who heard this case, and he never did.

2. Plaintiff's counsel also conceded at oral argument (a concession similarly not noted by the majority) that he could have requested the trial court to order the defendant to send out its notice to the names listed on defendant's "fax database," but did not do so.

3. Neither party proposed an "opt-in" method of class notification but, at different times, both sides seemed amenable to it. The real party in interest supports that method, albeit not particularly enthusiastically, via its opposition to the petition for the writ of mandamus addressed to us, and the attorney for the petitioner did so on March 19, 2004, when this technique was first suggested by the trial court. Then, this dialogue took place:

"Mr. Fallat [Petitioner's Counsel]: Well, Your Honor . . . if that is the way the court eventually rules, we can live with that and, quite frankly, what we will end up doing is probably giving notice to everybody on that 800 list ourselves and giving them an opportunity to opt in—

"The Court: Okay.

"Mr. Fallat:—But I don't want to preclude the various options we have now."

4. The writ before us *does not* raise an issue of class definition or class certification, the issue that was involved in almost all of the class action cases cited by the majority, especially the one relied on most heavily by it, *Kern v.*

*Siemens Corp.* (2d Cir. 2004) 393 F.3d 120 (*Kern*).[2] The class was certified in this case—by, as the majority notes, another judge—in February 2003. The issue here is how to identify who is and who is not a member of that class and notify them; that and only that is what this case is all about.

Now to some legal premises that bear on how we ought to deal with this case:

1. First and foremost is the rule that appellate courts should decide cases on the easiest and simplest bases presented and not "overreach" to issues that are not necessary to decide. (See, e.g., *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230–231 [45 Cal.Rptr.2d 207, 902 P.2d 225]; *Hi-Voltage Wire Works, Inc. v. City of San Jose* (2000) 24 Cal.4th 537, 577–578 [101 Cal.Rptr.2d 653, 12 P.3d 1068] (conc. and dis. opn. of George, C. J.).) What is called for here—and usually—is a "judicial minimalism." That concept has been defined by University of Chicago Professor Cass R. Sunstein as "the phenomenon of saying no more than necessary to justify an outcome, and leaving as much as possible undecided . . . ." (Sunstein, One Case at a Time: Judicial Minimalism on the Supreme Court (1999) p. 3.) The typical minimalist opinion "justifie[s] its decision by reference to a set of factors, not by a broadly applicable rule . . . ." (*Id.* at p. 16.) In contrast, a "maximalist" opinion decides the case "in a way that sets broad rules for the future and that also gives ambitious theoretical justifications for outcomes." (*Id.* at pp. 9–10.) Minimalism, Sunstein continues, facilitates the difficult search for consensus by "making agreement possible when agreement is necessary, and making agreement unnecessary when agreement is impossible." (*Id.* at p. 50.)

By its far-reaching opinion, the majority indulges in "judicial maximalism" via an extensive discussion of "opt-in" classes under rule 23 of the Federal Rules of Civil Procedure (federal rule 23) and how that case law should impact a trial court's implementation of rule 1856(e) of the California Rules of Court (California rule 1856(e)). Such a reach is simply not appropriate, much less required, given (a) the limited record before us and (b) the ineffective handling of this case in the lower court.

2. California law is clear that "[b]ecause trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435 [97 Cal.Rptr.2d 179, 2 P.3d 27]; see also, to the same effect, *Block v. Major League Baseball* (1998) 65 Cal.App.4th 538, 543 [76 Cal.Rptr.2d 567]; *Reese v. Wal-Mart Stores, Inc.*

---

[2] Interestingly enough, in *Kern* it was the *plaintiff* who, for reasons not here relevant, requested the "opt-in" procedure as part of the class certification process.

(1999) 73 Cal.App.4th 1225, 1233 [87 Cal.Rptr.2d 346].) And, as the majority points out (but then largely ignores), that standard has, most logically, also been applied to disputes concerning providing notice to class members. (*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 251 [110 Cal.Rptr.2d 145].)[3]

3. Under California class action law "[i]t is the plaintiff's burden to identify class members." (*State of California ex rel. Dept. of Motor Vehicles v. Superior Court* (1998) 66 Cal.App.4th 421, 434 [78 Cal.Rptr.2d 88] (*DMV*); see also *Cooper v. American Sav. & Loan Assn.* (1976) 55 Cal.App.3d 274, 286 [127 Cal.Rptr. 579].)

4. "Opt-in," even as a method of class identification, is not as disreputable as the majority suggests. The technique was specifically mentioned by Justice Croskey in *Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1436 [95 Cal.Rptr.2d 57]. And, as the Second Circuit noted in the course of *Kern*, the technique is specifically mandated in numerous federal statutes and has been used—albeit admittedly rarely—in other, nonstatutory, federal cases. (See *Kern, supra,* 393 F.3d at pp. 126–129.)

5. No case at all pertinent to this issue has apparently been decided under California rule 1856(e). Additionally, the majority omits to mention two important things regarding that rule. The first is that its drafters made clear that it was intended to reinforce, not undermine, a trial court's discretion. (See fn. 3, *ante.*) The second is that, as a simple reading of California rule 1856(e) and federal rule 23(c)(2) makes clear, the two are not even remotely similar in wording.

The record of the two hearings before Judge Mittlesteadt on the issue of class notification makes abundantly clear that the discovery conducted regarding the identity of the members of the class was, to put it mildly, unproductive. I agree with the majority that part of this is clearly because Judge Mittlesteadt was not the judge who supervised discovery on the very issue before her, i.e., the identity of the class members. The other reason or reasons

---

[3] In its September 12, 2001, report to the Judicial Council recommending the adoption of, among other rules, rule 1856, the Civil and Small Claims Court Advisory Committee specifically noted that that rule "gives the court discretion to determine what is proper notice under the circumstances of the case and who should provide and pay for notice." (Judicial Council of Cal., Advisory Com. Rep., Uniform Statewide Rules for Class Actions (2001) p. 9.) That report continued: "Notice is to be given to the class, but none of the rules specifically requires notice to 'each class member.' The original draft of some of the rules required notice to each member and the committee recommended changing it to be consistent with case law and Civil Code section 1781." (*Id.* at p. 12.) It then concludes on this topic: "The rule permits the court to determine the type and scope of notice and who pays for notice, depending on the type of class action and *circumstances of the case.*" (*Id.* at p. 14, italics added.)

for the lack of productivity are simply unclear from the limited record before us on this writ petition. But I think it is pretty obvious, from a perusal of that record, that those reasons are probably: (a) the possible failure of petitioner's counsel to diligently pursue discovery of the defendant's records and/or (b) the possible improper avoidance and resistance of discovery requests by defense counsel.[4] But, again, because of the unusual situation where the judges who heard either the certification motion or the discovery disputes were not the same as heard the class notification motions, we do not know who is principally to blame. As I suggested above, that is one of two tasks a new, fully-assigned judge should undertake on remand of this case. The second is to request written proposals from both sides as to methods for class identification and notification. Once those are received, and the "discovery fault" issue explored, I suspect it will be relatively easy to come up with both a fair and appropriate method of class identification and notification.

A trial court wrestling with the issue of class notification clearly has the right, and possibly even the duty, to consider which party is mainly at fault when difficulties arise in the notification process. This was made clear by *DMV, supra,* 66 Cal.App.4th at pages 436–438. There, the Department of Motor Vehicles (DMV) petitioned for a writ of mandate to direct a Los Angeles trial court to vacate an order certifying a class of persons entitled, per a prior California Supreme Court decision (*Woosley v. State of California* (1992) 3 Cal.4th 758 [13 Cal.Rptr.2d 30, 838 P.2d 758]), to the refund of license fees for vehicles originally sold outside of California that were higher than the fees charged for similar vehicles sold in California. But also before the court was the issue of how to give, and who should pay for, notice to members of the class, an issue complicated by the actions of the DMV regarding its own records. The court resolved this problem thusly: "Ordinarily, it would be the plaintiff's burden to identify class members and establish their numerosity. However, because of the particular circumstances presented here, we find it would be equitable in this case to require the DMV to share the costs of notification with plaintiff for the purposes of identifying potential class members. Plaintiff has the responsibility of determining the eligibility of each for inclusion in the

---

[4] The majority appears to assume that there was improper conduct on the part of the defendant regarding its handling of its records. (See maj. opn., *ante,* at pp. 1553–1554.) There are, to be sure, declarations in the record to that effect, but I believe the record before us, which does not include all the pleadings and orders involving the discovery disputes in this case, is far too incomplete to justify any assumption to this effect. The majority also appears to hint to the trial court (maj. opn., *ante,* at pp. 1554–1555 and fns. 16 and 17) that it might well reconsider its earlier order that the defendant's fax database is a trade secret. Another panel of this court denied writ review of that order, with Presiding Justice Kline dissenting. I understand fully that such a denial is not "law of the case," but to use the fact that the panel on this case has changed as a basis for effectively overturning our earlier ruling seems to me a little dubious.

litigation class. The trial court shall have the discretion to modify the costs burdens in the event the parties' conduct justifies." (*DMV, supra,* 66 Cal.App.4th at p. 438.)

I would apply this same principle here: if, for example, the trial court's inquiry on remand shows that petitioner's counsel has been less than diligent in pursuing available discovery to identify potential class members, the ordering of a reasonable class identification procedure proposed by defendant (including "opt-in") after the USA Today and Web site publications would seem appropriate. Conversely, if the court determines that defense counsel was mostly responsible for the current state of affairs, ordering that the class be identified in any reasonable manner proposed by petitioner would likewise seem appropriate.

But remanding this matter to the trial court for a careful look at "who killed Cock Robin" in the discovery wars and then revisiting the methodology of class notice is not what the majority does. Rather, it undertakes an extended discussion of the application of federal rule 23(c)(2), and what the federal courts (and commentators thereon) have said about "opt-in"—almost entirely, as noted above, in the context of *class certification*)—and then declares: " 'Opt-in' requirements seem to us as offensive to the reasonable notice provision of California rule 1856(e) as to that of federal rule 23(c)(2)." (Maj. opn., *ante,* at p. 1548.)

With this sentence, the majority effectively announces a brand new rule for, apparently, all California class actions: a trial court may never use "opt-in" for any purpose in such actions. But the vehicle by which it does so (1) involves both a very limited record and an unfortunate division of authority between various lower court judges, and (2) is made with only a token acknowledgment of a trial court's inherent discretion in such matters.

I think the facts of this case—including but not limited to Judge Mittlesteadt's legitimate concerns over "under inclusion and over inclusion"—make it an inappropriate vehicle by which to preclude a trial court's possible discretionary use of an "opt-in" procedure for class identification and notification. Further, the majority opinion effectively announces the same rule for cases involving class certification. I would have thought the proper vehicle by which to announce a rule governing class certification would be a case involving that issue.

In contrast to the majority's extended exercise of "judicial maximalism," I would simply reverse the lower court's order and remand the matter to it with directions to revisit the issue of class notification in the manner suggested above.

A petition for a rehearing was denied June 6, 2005, and the opinion was modified to read as printed above. Haerle, J., was of the opinion that the petition should be granted.